BLISS N. DAVIS *v*. AARON H. SMITH.

[IN CHANCERY.]

*Attorney and Client. Estoppel. Costs.*

When a party employs an attorney in a cause he has the right to his services about the litigation therein in his behalf, and to confide to him all facts concerning the subject of litigation, without being exposed to having the facts used by the person employed in any manner against his advantage.

An attorney employed in a cause, by purchasing the interest of the adversary party, acquires no right as against his client that he can enforce by judicial proceedings against him, and the client may treat the purchase as made for himself.

While the orator was the defendant's solicitor and legal adviser in a foreclosure suit in favor of the defendant against P. and in other litigation upon the same subject matter between them, the orator purchased of P. his interest in the premises and then tendered the defendant the amount due thereon under his sale to P. and his costs in the foreclosure suit. The defendant declined to receive the same and claimed the benefit of the purchase, offering to pay the orator what he paid P. The orator then brought this suit in chancery praying for an order on the defendant to convey said premises to the orator upon payment by him of the amount tendered as aforesaid. *Held* that the defendant was entitled to take the benefit of the orator's purchase by paying him the amount that he paid, whether the orator made the purchase by instructions of the defendant to purchase for him or not, and although he intended to purchase for himself; and there being a question of rents and profits of the premises while the orator was in possession, that could be settled in this suit.

The fact that the orator before making the purchase, but while he was the attorney of the defendant in his litigation with P., heard the defendant say to P. that all he wanted was his money, would not estop the defendant from claiming the benefit of the purchase, he not having told the defendant that he proposed to make the purchase in reliance upon that saying.

The chancellor, upon the hearing before him, dismissed the bill, from which the orator appealed; but it was *held* that the orator should pay the costs in the supreme court, as well as in the court below, although the decree is reversed, because the defendant prevails upon all the issues litigated, and to a greater extent in this court than in the chancery court.

BILL IN CHANCERY. The bill alleges that on or about the 9th day of May, 1864, one William T. Putnam bargained with Aaron Smith of Danville, to purchase of him a certain farm in Danville, known as the Chandler farm, for the sum of eighteen hundred dollars, Smith to give title to Putnam on such payment; and on said 9th day of May Putnam paid Smith eight hundred dollars toward said farm, which Smith received in part payment; and it was then agreed that Smith and his wife should make and execute to Putnam and wife a deed of the same, and put the deed into the hands of A. McMillan for him to keep for both parties till such time as Putnam could pay Smith the balance of said purchase money, and

said deed was duly executed by Smith and wife, and put into said McMillan's hands according to said agreement, with directions to him by the parties, that when that balance was so paid to Smith for said farm, or a mortgage was executed by Putnam and wife for about the sum of eight or ten hundred dollars in case Putnam could not immediately raise all of said balance, then Smith to have McMillan affix the proper revenue stamp to said deed and deliver the same to said Putnam and wife ; and Putnam then entered into the absolute possession of said farm, and has so continued in possession by himself and tenants, taking all the rents and profits to himself, until the 20th day of June, 1866 ; that disagreements arose between Smith and Putnam respecting the times of payment of the mortgage notes, to be secured by mortgage, Smith claiming one time for the payment of said balance due, and Putnam another, but Smith all the time claiming the sale of said farm to Putnam was absolute, and he was taking legal measures to have the equity of redemption of Putnam foreclosed before the court of chancery, and Putnam fearing he could not pay the balance due Smith, on said 20th day of June, sold his and his wife's equity of redemption in said farm to the orator, and thereupon Putnam and wife executed and conveyed by deed their right and title in said farm and all their equity of redemption in the same to the orator, and the orator says thereby he has succeeded to all the rights of Putnam and wife in said premises, and that the orator has tendered and offered to pay to Smith the sum due him towards said farm as balance of purchase money and interest thereon, and certain taxes paid by Smith on said farm, which of right Putnam ought to have paid, amounting in the whole to the sum of twelve hundred and thirty-two dollars and six cents, on the 9th day of May, 1866, and interest on said sum up to the 10th day of July, 1866, when the orator tendered Smith the above sum, and also paid Smith his legal costs in the above chancery suit against Putnam by crediting him therefor on the orator's book, where said costs were charged by the orator to Smith, (the orator having been Smith's attorney in said suit.) And the orator demanded of Smith, when he offered so to pay him his said balance, that he should affix or cause to be affixed the revenue stamp on said deed above referred to, and cause said deed to be delivered to the orator, or give the orator full and perfect title in said farm.

The orator prays that Smith may be ordered and directed to receive of the orator the sum due him in equity to be ascertained by a master, and that he shall be ordered and decreed to execute and deliver said deed in the hands of McMillan, or execute to the orator a good and valid title of said farm.

The defendant in his answer says, that the balance of the purchase money in the sale of the farm to Putnam was to be paid in a few weeks; that Putnam immediately went into possession of the place, and continued in the occupation of the same until some time in the spring of 1865, when he abandoned the same, and claimed that he was not bound by the trade, and brought an action in the name of himself and wife, by writ returnable to June term of Caledonia county court, 1865, against this defendant, to recover back said eight hundred dollars with interest, and as soon as he was sued in said action, he employed the orator as his attorney, counsellor and legal adviser, (he being by profession an attorney and counsellor at law,) to aid and advise him in relation to said farm trade and to defend said suit, and at the June term of said court, 1866, said action was tried by the court and jury; and it not appearing from the evidence that Putnam's wife had any title or interest in the money sued for, the court decided that a joint action by the husband and wife could not be maintained, and directed a verdict for the defendant, to which ruling of the court the plaintiffs excepted.   On which trial the orator appeared and acted as counsel for the defendant, and from the time of his retainer became possessed of a full disclosure of the facts relating to said trade as well as the wishes of this defendant confidentially communicated to him by this defendant as his legal adviser. The defendant, as things had turned with him, was desirous of making some settlement with Putnam as to said eight hundred dollars, and taking into consideration the taxes which Putnam was to pay and the loss of the use of the place, pay him back what was right and equitable and keep the place, and so informed the orator both before and after said trial.

After the trial and before the adjournment of the court, the defendant made several attempts and offers to settle with Putnam, and went to the orator for advice and told him what offers he had made Putnam, and the orator desired to know why he was in such haste to close the matter, and he replied, confidentially, he wanted to keep the place and did not know but some one would try and get it, and he wanted to have it settled.   The orator advised him to let Putnam entirely alone, and said it was impossible for Putnam and the defendant to settle, but that he would settle with Putnam a great deal better than the defendant could, and that he would fix it all right between him and Putnam and have the defendant keep the farm, and advised him to take immediate possession of the same, which he did, and trusted to his fidelity and discretion to bring about the promised result.

One of the reasons why he was anxious of bringing about a set-

tlement with Putnam was that he had received of him the eight hundred dollars, and though he had obtained a verdict in said action, he was aware that it was upon the ground of a misjoinder of parties and not upon the merits, and that he was exposed to another suit. He had been deprived of the use of the farm for two years; been obliged to pay the taxes on it all the time; been afflicted with a lawsuit, and inasmuch as Putnam had disaffirmed the contract, he thought it best for his interest to yield to it, and offered Mr. Ross, the attorney for Putnam, before the said trial, to pay back the said eight hundred dollars, deducting the taxes and the use of the farm, but he claimed to recover large special damages upon the alleged ground that the defendant had not fulfilled the contract on his part.

In a very short time after taking possession of the farm as aforesaid it came to the ears of this defendant that the orator had settled with Putnam and he supposed it was all right, and that whatever he had done was done as the attorney and counsel for this defendant and for his benefit, and without the least suspicion that the orator had bought up the controversy to push it afresh in his own name for his own benefit; and this defendant insists that the orator having been employed and accepted a retainer by this defendant to resist and defend all of the said Putnam's claims growing out of said farm trade, and to defend this defendant in all matters growing out of the same, had no right so to do, and that it was not competent for him to purchase the controversy or claim of Putnam, and claim the intervention of a court of equity to have himself substituted in the place of Putnam to carry on the same controversy himself, and this defendant objects to the substitution of his counsel in the place of his antagonist, as it will and has already obliged this defendant to employ other counsel, less familiar with the case, and will expose the orator to the temptation to take advantage of the confidential communications of this defendant; and the orator never having asked to be discharged as the counsel of this defendant, this defendant denies the power of any court to dissolve the relation of attorney and client that exists between them.

This defendant further says, that by reference to some dates, he believes that it was on the 19th day of June, 1866, that the orator advised him to let Putnam alone, and to take possession of said farm, and he had no suspicion of anything wrong between him and the orator until the 3d day of July, 1866, when, to his surprise and astonishment, the orator informed him that he had settled or made some bargain with Putnam on his own account, and was going to have the farm himself. This led to an angry al-

tercation, in which this defendant asked him how much money he paid Putnam, and he refused to tell, and immediately, and not knowing how much he paid Putnam, the defendant tendered the orator, as his attorney, counsel and agent, the sum of six hundred dollars, as and for so much money paid by him to Putnam on defendant's behalf, and not as the assignee, representative or substitute of Putnam. The bargain between him and Putnam was not made in writing, but existed only in parol.

The exceptions taken by the plaintiff on the trial of said action were not prosecuted because the orator settled the matter during the term of the court at which they were taken.

The orator filed a replication traversing the answer. A vast amount of testimony was taken in support of the respective allegations of the bill and answer; and at the June term, 1870, Caledonia county, STEELE, Chancellor, the cause was heard, and a decree was made as follows:

The court hold that the relation of attorney and client is such that the client Smith has the right, if he chooses, to adopt as his own the contract of purchase made by Davis, the attorney, with the adverse party, that purchase involving and growing out of the matter in litigation, and not being made with the knowledge or consent of the client, and that this is so, even though the attorney acted in good faith toward his client, and in accordance with what he supposed to be his client's wish and interest. Accordingly it is ordered and decreed that the bill be dismissed with costs.

From this decree the orator appealed.

*Bliss N. Davis*, for the orator, maintained that Putnam was entitled to a specific performance of the contract. Brown on Statute of Frauds, §§ 466–489; Newland on Contracts, 181–183; *Mechanics' Bank* v. *Lynn*, 1 Pet., 376; *Stark* v. *Wilder*, 36 Vt., 754; 1 Sto. Eq. Jur., §§ 663, 759–763. That the orator had a right to make the purchase for himself. 9 Paige Ch. R., 663; *Van Epps* v. *Van Epps*, Ib., 240. In the cases cited by the defendant, the attorney was called upon to defend a *title* to property, or prosecute a title against some other outstanding title, or in prosecuting the title, discovered some defects in his client's title and bought the true title in. It was bad faith in the defendant to claim the benefit of the trade, under the circumstances.

35

*Thomas Bartlett,* for the defendant, argued that Putnam rescinded the contract without cause, and Smith had a right to regard it as rescinded.    23 Vt., 114 ; *White* v. *Yaw,* 7 Vt., 357 ; 2 Swift, 27 ; 11 Vt., 138 ; 2 Sto. Eq. Jur., 771–776.    Payment of the purchase money is not such part performance as will take the case from the reach of the statute of frauds.    2 Sto. Eq., 760, and cases there cited.    The defendant is not estopped from claiming the benefit of the purchase.    2 Smith's Lead. Cas., 564 ; 1 Sto. Eq., § 386 ; 32 Maine, 27 ;    Sto. on Agency, § 91 ;    2 Vt., 300 ; 17 Vt., 449 ; 26 Vt., 374 ; 28 Vt., 328 ; 38 Vt., 673 ; 20 Conn., 98, 568 ;    5 N. H., 452 ;    6 Pick., 455 ; 16 Ib., 460. The relation of the orator with the defendant would not admit of his buying the subject of litigation.    1 U. S. Dig., 339, § 370 ; 4 Ib., 225, paragraphs 166–169 ; 10 Ib., 80, paragraphs 16–17.

The opinion of the court was delivered by

WHEELER, J.    By what had taken place between the defendant and Putnam and wife concerning the farm in controversy, the defendant had eight hundred dollars in money that he had been paid by Putnam, which he held subject to his liability to Putnam and wife for it, and held the legal title to the farm, subject to the rights that Putnam and wife had acquired in it.    When the orator purchased the interest of Putnam and wife, they were claiming the eight hundred dollars of the defendant, and were endeavoring to enforce their claim by suit at law.    The defendant was resisting their claim and defending the suit, was claiming that they had no right to the farm without performance of the contract of purchase, and was endeavoring to enforce his claim and foreclose their right by a suit in equity ; and the orator had been retained for the defendant as legal adviser in this litigation, and was the attorney and counselor of the defendant in the suit at law, and the solicitor of the defendant in the suit in equity.    The title to, and ownership of, the farm and the right to this money were all involved in this litigation.    The orator was an attorney of one of the courts and a solicitor of the other in which the suits were pending, and as such was an officer of each of those courts.    The office of an attorney or solicitor is a very important one to par-

ties who have occasion to employ them in litigation pending before courts of which they are officers and before which they practise. When so employed, the party employing them has the right to their services about the litigation in his behalf, and the right to confide to them all facts concerning the subject of litigation, in order that their services may result to his best advantage, without being exposed to having the facts used by the person employed in any manner against his advantage. The office and the duties belonging to it, and their necessity to the administration of justice by courts, are recognized by law, and the obligations of those who hold the office, to their clients as well as to others, are enforced by solemn oath. When the orator was retained by the defendant in this litigation, he took upon himself the duty of performing the obligations of his office for the defendant in all things pertaining to it about the litigation. Whatever facts were confided to him by the defendant in the progress of the litigation, concerning it or the subjects of it, he was bound to use for the benefit of the defendant, and not to use for himself or any other person to the prejudice of the defendant. When he purchased the interest of Putnam and wife in the subjects of litigation, he stood in the place they had stood in with reference to the litigation. The interest he acquired was adverse to that of the defendant, after he got it, the same as it was while Putnam and wife had it, and he became interested to resist for himself what he had undertaken to promote for the defendant, and to promote for himself what he had undertaken to resist for the defendant. All facts confided to him by the defendant were in his possession, and he could use them against the defendant in any litigation that he should be allowed to carry forward to enforce the claims he had bought against the claims of the defendant. After the purchase he stood in the same relation to the interests of the defendant involved in the litigation that he would have stood in if, before the purchase, he had abandoned the defendant and had accepted a retainer from Putnam and wife. If he had done so, he would not have been allowed to appear for and assist Putnam and wife in the litigation, because it would have been a gross violation of his duty to the defendant, and of the right of the defendant not to have his own counsel carry the

knowledge acquired of his interests in the litigation to the assistance of his adversary.  The defendant has the same rights now that he would have had then.  By purchasing the interest of Putnam and wife the orator neither acquired any right of the defendant or deprived him of any.  The orator would have had no standing place in court from which he would have been heard in behalf of Putnam and wife against the defendant, and has none now from which he has a right to be heard, in the same interest, against the defendant, in behalf of himself.  By the purchase he acquired no right upon which he can stand to contend against the defendant, for either the farm or the money, against the wishes of the defendant.

It appears from the testimony that at one time when the orator, Putnam and the defendant were talking together about the litigation, the defendant said that all he wanted was his money.  The orator heard and knew of this saying, and now claims that the defendant, because he said that, ought not to be upheld in claiming anything but his money, and that the orator, having offered him his money, ought to have the farm.  But the defendant did not make this statement to influence the orator to do anything for himself on the strength of it, nor in view of any action by the orator in regard to it.  He made it to influence Putnam, and not to influence the orator, and it does not appear to be anything but a statement of his claim made to give Putnam to understand that he would not put an end to the contract and keep the farm except on terms favorable to himself.  The orator could not rely upon the statement so as to bind the defendant to make the reliance good, without informing the defendant that he was about to rely upon it.  It does not appear that he did so inform the defendant, but rather that he did not.  The rights of these parties stand therefore the same as if the statement had not been made.  These conclusions as to the rights of the parties make it unnecessary to determine the disputed question of fact as to whether the defendant expressly requested the orator to purchase the interest of Putnam and wife or not, and whether the orator did purchase it in pursuance of that request or not, for upon the case made by the pleadings and the testimony on the part of the orator alone, the

orator acquired no right by the purchase that he can enforce by judicial proceedings against the defendant. The claim of the orator, made in this suit, rests wholly upon that purchase, and as he acquired no right by the purchase upon which he can stand to ask relief, the relief asked must be denied.

The defendant had employed the orator to advise him about the subjects of the purchase, and to act for him in the suits concerning them. They were directly involved in the litigation, and the defendant might reasonably have desired to make the purchase himself, or to have had it made for him, to promote his interests in the litigation. He had a right to make it, or to have it made for him, if he could. The orator, having made it, although he made it for himself, it being made without right as against the defendant, could not hold it from the defendant against a claim of it by the defendant, upon an election by him to treat it as if made for him. It appears that the defendant did elect to take the purchase, and undertook to pay the orator the cost of it, and in pursuance of the undertaking tendered to the orator such a sum of money as he supposed would be equal to the cost. After these things had been done the orator held the interest he acquired by the purchase for the defendant, and was entitled to have what he paid for it of the defendant. The defendant recognized all the rights of the orator against him and did all he could to satisfy them. The orator would not be satisfied with what the defendant did and was willing to do towards him, but claimed to hold the interest he had acquired of Putnam and wife against the defendant, and instituted this suit to enforce this claim. The court of chancery dismissed the bill with costs, and if that decree should stand, the defendant would be left exposed to further litigation of the claims which Putnam and wife had, in their name, for the benefit of the orator, and the liability of the defendant for the cost of the purchase would be left unsettled. Although the orator probably would not undertake to, nor be allowed to, appear in and conduct any suit in the name of Putnam and wife against the defendant, on these claims, as counsel, yet he would be interested in them and in any suit to enforce them the same as he is in this suit, and in such suit the defendant

would be at the disadvantage of having to contend with his own counsel, the same as he would have had to in this suit, if the orator could have stood upon and contended for the interests he bought of Putnam and wife. No right to or interest in the subjects involved remains to Putnam or his wife, for the orator purchased all their right and interest of them. The orator and the defendant own all the interests involved, and each is entitled to have the rights of each settled and adjusted in this case so far as properly can be. Upon payment by the defendant to the orator of the cost of the purchase, no right to or interest in the subjects involved will remain to the orator, for then the defendant will have taken to himself, and paid for, all the right and interest acquired by the orator, according to his right. The legal title to the farm, subject to these claims, is now in the defendant, and a decree denying the claims of the orator to the farm upon payment of the cost of purchase will settle all the rights of the parties and all their liabilities to each other, except as to rents and profits of the farm, so far as they are here concerned. The orator, having taken possession of the farm under the purchase from Putnam and wife, against the right of the defendant, is bound to account to the defendant for the rents and profits of it while in his possession, upon payment by the defendant of the cost of the purchase. The amount of the rents and profits should be taken from the amount to be paid to the orator, and then each will be paid without circuity. An account of the rents and profits is necessary to this adjustment, and being necessary for that purpose, can be properly taken in this suit. A decree denying the claims of the orator upon payment of the cost of the purchase to him and allowing the defendant the amount of these rents and profits as ascertained upon an accounting, will settle all the rights of the parties involved in this litigation. Such a decree cannot be made without reversing the decree of the court of chancery. The reversal of that decree is of no importance except as to costs. Ordinarily when a decree of the court of chancery is reversed in this court, the party who appealed recovers the costs of this court. But in this case the defendant prevails upon all the issues litigated in the case and to a greater extent in this court than in the court of

chancery. He has substantially prevailed upon the appeal, and notwithstanding the reversal of the decree, is entitled to the costs of this court as well as of the court of chancery.

Decree of court of chancery reversed and cause remanded with mandate made to conform to these conclusions.