V. P. NOYES *v.* E. H. LANDON AND WIFE.

[IN CHANCERY.]

*Mortgage. Principal and Agent. Bills and Notes. Bona Fide Holder. Negotiable Instruments. Usury.*

1. The law requires the utmost good faith from an agent, and he will not be allowed to make profit for himself in the transaction of the business of his principal; thus, if an agent purchases at a discount an outstanding draft against his principal, the discount inures to the benefit of the principal. And if in such case the principal, without a knowledge of the discount, gives his personal notes to the agent for the full amount of the draft, the consideration fails to the amount of the discount.

2. And when such notes are transferred before due as collateral security for en-dorsements previously made, to one without notice, who is a *bona fide* holder, he takes them discharged of all equities; but otherwise, if they are transferred after they are due.

3. The defendant, being financially embarrassed, called on B. to assist him in his difficulty, and agreed to pay him liberally for his time and expenses. B. accordingly purchased the defendant's outstanding draft, and he gave B. his notes in payment therefor; *Held,* that B. was an agent in purchasing the draft.

4. When one is financially embarrassed, and he employs another to assist him, and the value of his services is afterwards agreed upon and paid by a promissory note, it is not usury.

BILL IN CHANCERY. Heard on a special master's report, September Term, 1886, TAFT, Chancellor. Decree that said Noyes held those notes (eleven in number) which had not matured at the time of the transfer to him of the same, in good faith and free from any equities existing between said Burton and said Edwin H. Landon; that as between said Burton and

said Edwin H. there was a failure of consideration of said notes to the extent of the sum of $855.17, as of the date of the original notes ; that as the latter named sum is larger than the amount of the note that was over due at the time the notes in question were transferred to said Vernon P. Noyes, it is considered that no recovery can be had for the over due note ; and that a decree pass to the petitioner for the amount of the eleven notes less the endorsements, with costs.·

*H. C. Adams,* for the defendant.

The orator is not a holder for value. He parted with nothing upon the faith and credit of the security received. *Griswold* v. *Davis,* 31 Vt. 390. *Atkinson* v. *Brooks,* 26 Vt. 569, is overruled by *Austin* v. *Curtis,* 31 Vt. 64.

The doctrine that when notes are taken " to be applied when collected " the transferee is not a holder for value, is approved in *Chaumette* v. *Bank of England,* 9 B. & C. 208 ; *Williams* v. *Little,* 11 N. H. 66 ; *Rice* v. *Riatt,* 17 N. H. 116.

The orator stands as a purchaser with notice. *Ray* v. *Coddington,* 5 Johns. Ch. 54 ; *Jewett* v. *Palmer,* 7 Johns. Ch. 65 ; 8 Wheat. 421.

The assignee of a chose in action takes it subject to all the equities existing at the time in the original obligor or debtor. *Foot* v. *Ketchum,* 15 Vt. 258–268 ; *United States* v. *Hodges,* 6 How. 279.

The relation of principal and agent existed between the parties. 1 Story Eq. Jur. p. 304, s. 315 ; *Reed* v. *Norris,* 2 Myl. & C. 362 ; *Wade* v. *Pulsifer,* 54 Vt. 45 ; *Taylor* v. *Salmon,* 4 Myl. & C. 133 ; 10 Vt. 116 ; 1 Lead. Cas. Eq. 220. It was usury. *Fisher* v. *Stevens,* 23 Vt. 272 ; *Williams* v. *Wilder,* 37 Vt. 613 ; *Wells* v. *Robinson,* 53 Vt. 202 ; *Cross* v. *Mann,* 53 Vt. 501 ; *Ward* v. *Whiting,* 32 Vt. 89 ; *Grow* v. *Albee,* 19 Vt. 540.

The rule that the creditor's right of appropriation does not extend to demands which the laws prohibit is uniformly and sternly adhered to. It is not like the case of a debt barred by

the Statute of Limitations, or one which comes within the Statute of Frauds. *Wood* v. *Barney*, 2 Vt. 369; *Peters* v. *Slack*, 13 Vt. 590; *Bancroft* v. *Dumas*, 21 Vt. 456; *Rohan* v. *Hanson*, 11 Cush. 44; *Caldwell* v. *Stafford*, 14 N. H. 437; *Wright* v. *Lainy*, 3 B. & C. 161; *Erwin* v. *Stafford*, 45 Vt. 390.

Burton got no title to $855.17. "Things captured by pirates or robbers do not change ownership." 2 Bouvier, 116. He who seeks equity must do it. 1 Story Eq. Jur. s. 302; 108 U. S. 149; 5 Johns. Ch. 142.

*Farrington & Post*, for the orator.

Noyes was a *bona fide* holder and not subject to equities or defences between prior parties, if any existed. A transfer before maturity of negotiable paper as security is a proper use of such paper, and is in the usual course of commercial business. 1 Dan. Neg. Ins. ss. 184, 821–6; 3 Kent Com. (9th ed.) 102; *Swift* v. *Tyson*, 16 Pet. 1; *Atkinson* v. *Brooks*, 26 Vt. 569; *Railroad Co.* v. *Nat. Bank*, 102 U. S. 14; *Straughan* v. *Fairchild*, 80 Ind. 598; *Sayles* v. *Garrett*, 110 U. S. 288; 31 Vt. 393. Burton was not such an agent but that he could purchase on his own account. Whar. Ag. 116, 118, 231, 235; *Ely* v. *Hanford*, 65 Ill. 267; *Page* v. *Hammond*, 26 Vt. 375. There was no usury. *Davis* v. *Converse*, 35 Vt. 503; *Ward* v. *Whitney*, 32 Vt. 89; *Wells* v. *Robinson*, 53 Vt. 202; 1 Jones Mort. s. 650; *Wing* v. *Peck*, 54 Vt. 245; *Rowell* v. *Marcey*, 47 Vt. 627.

The opinion of the court was delivered by

ROYCE, Ch. J. It appears from the report in this case, that previous to May, 1865, the defendant, E. H. Landon, and one J. G. Rockwell had been in partnership in the business of buying and selling farm produce, and that in the course of their business they had drawn on Demorest & Simonds for $5,055.17, and that the draft had been discounted by the old Bank of Burlington; that Rockwell & Landon became financially em-

barrassed, and when said draft was about maturing they called on O. A. Burton, the payee of the notes hereinafter referred to, to assist them in their financial trouble, and agreed to pay him liberally for his time, trouble and expense in so assisting them; that the liabilities of Rockwell & Landon were so arranged between themselves that it became the duty of Landon to pay said draft; that Burton, in the interest of Landon, endeavored to have the Bank of Burlington take the notes of Landon secured by mortgage in payment of said draft, which the bank declined to do; that, June 10, 1865, Burton purchased said draft of the bank for the sum of $4,200, which was $855.17 less than the amount due upon it; that, August 14, 1865, the parties met, and the question as to how much Burton was going to charge for his services, expenses and trouble was talked over, and the interest was figured by Burton on said draft at its face value and $600. The amount charged by Burton to Landon as his proportionate share for his services, time, trouble and expenses was added, and Landon then executed his notes to Burton for the amount so found to be due, and secured the same by a mortgage that day executed by himself and his wife; that Landon did not then know that Burton purchased said draft at a discount of $855.17, but supposed that he paid what appeared to be due upon it; that Landon and Burton had several meetings subsequent to that date and previous to January 17, 1882, at which the interest on said notes was computed and application of payments was made; that, January 17, 1882, the parties again met. The interest was computed, and conversation was had about the entire transaction, and Landon then claimed that Burton charged him rather too high for his services in 1865, and something was said about making some deduction from the amount that appeared to be due; that Burton asked Landon what would be satisfactory to him, and he replied, "Throw off $466.90, which will make it even $6,000, and put it into twelve notes of $500 each, payable yearly;" that Burton asked him if that would settle the whole matter, and he replied that it would, and thereupon the twelve

notes and the mortgage sought here to be foreclosed were executed; that the $855.17 discount obtained by Burton upon the purchase of the draft, and the $600 charged by him for his time, trouble and expenses, and the interest on the same, formed a part of the consideration for said notes; that said notes were made payable to the order of O. A. Burton on January 17, 1883, and the rest yearly thereafter. That at some time previous to October, 1883, Noyes, the petitioner, had endorsed notes made by said Burton, and payable to the Savings Bank at Burlington for $19,000, and that in May, 1885, he paid said notes; that in October, 1883, Burton turned out and transferred to said Noyes eleven of said Landon notes, and in the early part of the winter of 1884, the other of said notes, as collateral security for such endorsements; that Noyes notified Landon April 10, 1884, that he held said notes; and that Noyes had no notice of any claim by Landon that they were tainted with usury or fraud until March 20, 1885.

The defendants claim that the arrangement made with Burton in 1865 constituted him the agent of Rockwell & Landon, and that what he did in the purchase of the draft from the Burlington Bank was done as their agent, and that the discount he procured, of $855.17, inured to their benefit; and that inasmuch as that sum entered into and formed a part of the consideration of the notes described in the mortgage, it, with the interest that has accrued upon it, should now be applied as payment upon said notes. The petitioner claims that in the purchase of said draft Burton was not acting as the agent of Rockwell & Landon, that the discount he procured was for his own benefit, and that he is not accountable to Landon therefor.

The first inquiry is as to whether the arrangement made with Burton created the relation of principal and agent. Rockwell & Landon were in financial trouble, and applied to Burton to aid and assist them, agreeing to pay him liberally for his time, trouble and expenses in so aiding and assisting them. Burton acceded to their request, and thereupon went to work with

them and did what they thought was necessary to be done to extricate them from their financial troubles ; and when his services were completed they paid him by including what he charged in the notes. given to him.

Agency is founded upon a contract, either express or implied, by which one of the parties confides to the other the management or transaction of some business to be transacted in his name or on his account, and by which the other assumes to do the business and to render an account of it. 2 Kent Com. 611. To prove an agency it is sufficient to show that the principal employed the agent, and that the agent undertook the trust. That Burton understood he was employed is evident from the fact that he demanded and received pay for his services. That Rockwell & Landon so understsod it is evident from the fact that they paid him what he demanded for his services, and that as far as they were made acquainted with what he had done, they adopted and ratified his acts. So Burton was, by virtue of what then transpired, constituted the agent of Rockwell & Landon to settle and arrange their financial matters. One of those matters was providing in some way for the draft that was about maturing, and which Burton purchased at a discount. In purchasing the draft Burton acted as the agent of his principals, Rockwell & Landon, and the discount he procured was for their benefit. The law requires the utmost good faith from agents. The relation is one of trust and confidence, and an agent will not be permitted to make profit for himself in the transaction of the business of his principal. The law of the subject is well stated by Lord COTTENHAM in *Reed* v. *Norris*, 2 M. & C. 361, in the following language : " Why is an agent precluded from taking the benefit of purchasing a debt which his principal is bound to discharge ? Because it is his duty, on behalf of his employer, to settle the debt on the best terms he can obtain ; and if he is employed for that purpose, and is enabled to procure a settlement of the debt for anything less than the whole amount, it would be a violation of his duty to his employer, or at least

would hold out a temptation to violate that duty, if he might take an assignment of the debt, and so make himself a creditor of his. employer to the full amount of the debt he was employed to settle." The same rule is laid down in 2 Pom. Eq. Juris. sections 901, 902; 1 Story Eq. Juris. sections 315, 316; and *Davis* v. *Smith*, 43 Vt. 269.

It appearing that neither Landon or Rockwell knew that Burton procured the discount upon the draft until since the commencement of this suit, the consideration for the notes, to the extent of the amount of that discount and interest on the same, has failed.

It is further claimed that the $600 claimed by Burton for his services, which was put into the note given by Landon in 1865, and which constitutes a part of the consideration for the notes given in January, 1882, should be treated as usury, or else as so extortionate that it should be disallowed. There is nothing found to justify the claim that it was usury, nor that it was unreasonable or extortionate in amount. Landon knew at the first settlement made with Burton what his claim was, and gave his note for the amount. At the settlement made January 17, 1882, the subject-matter of the reasonableness of the claim was discussed between Burton and Landon, with full knowledge by Landon of the services performed, and it appears to have been settled and adjusted to Landon's satisfaction. He cannot now ask to have that settlement of this item re-opened.

There being a want of consideration for the notes in suit to the extent above stated, as between the parties to the notes, the maker could have availed himself of that fact as a defence. That defence is equally available as against the note that was past due at the time it was transferred to Noyes. Whether it is any further available depends upon the character in which Noyes held the other eleven. They were current when transferred, and were transferred as security for his endorsements previously made. That a transferee can hold such notes in payment of, or as security for, an existing indebtedness, un-

affected by any equities that may exist between the parties to them growing out of the note transaction, seems to be well settled. *Swift* v. *Tyson*, 16 Pet. 1; *Railroad Co.* v. *Nat. Bank*, 102 U. S. 14; *Brush* v. *Scribner*, 11 Conn. 388; *Tarbell* v. *Sturtevant*, 26 Vt. 513; *Atkinson* v. *Brooks*, Ib. 569; *Austin* v. *Curtis*, 31 Vt. 64; Byles on Bills, 198; Story on Bills, ss. 191, 192.

It was held in *Williams' Exr.* v. *Smith*, 2 Hill, 301, that one to whom a promissory note has been transferred, before due, as collateral security for endorsements to be made by him, which are afterwards made, and who takes it without notice of a defence existing against it in the hands of the person from whom he received it, is entitled to be treated as a *bona fide* holder in the commercial sense. See also Story on Promissory Notes, 7th ed., 186.

The endorsements made by Noyes were made before the transfer of the notes to him, and he paid the notes so endorsed pending this suit; and while it is not found that Burton agreed to transfer them as security for his endorsements, it is fairly presumable that the transfer was made in pursuance of such an agreement, and that Noyes relied upon this promised security as the condition upon which he made the endorsements. We are unable to see any reasonable distinction that can be made between taking collaterals as security for an existing indebtedness and an existing liability. In the one case the liability is certain and fixed, and in the other it is contingent; and there would seem to be the same justice in permitting one to obtain and retain securities for his protection in the one case as in the other.

There has been great diversity of opinion among courts and law writers in defining who are *bona fide* holders of negotiable paper, and as to the protection that they are entitled to; but since such paper has become so important a factor in the transaction of business, the disposition of courts generally has been to encourage its circulation and use, and to afford all reasonable protection to those who have obtained it in good faith.

Landon made his notes negotiable, and thus put it in the power of Burton to transfer them. Noyes received them without notice of any defence that could be made to them. If either one must suffer, the loss should fall upon Landon ; for " whenever one or two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." *Lickbarrow* v. *Mason*, 2 Term, 63.

Among all the reported cases, and I have made quite diligent search, I have not been able to find one closely resembling this in all its facts. None of the cases to which we have been referred by the learned counsel have presented the question of the transfer of current notes to secure an indorsement previously made. But in view of the general rules that prevail and are applicable for the protection of *bona fide* holders of current negotiable paper, we conclude that Noyes obtained a title, discharged of all equities, to the eleven notes that were transferred to him while current, and that Landon's defence is only applicable to the note that was past due. It will be seen, by a careful examination of the cases referred to in the 26th and 31st Vermont, that the questions *decided* in those cases are not at variance with the views here expressed.

The decree of the Court of Chancery is affirmed, and cause remanded.