DAVIDSON COUNTY *v.* P. OLWILL, use, etc,

G. K. WHITWORTH, Trustee, *v.* STATE ex. rel. JOHN OVERTON.

COUNTY COURT. *Warrants. May bear interest when.* The County Court, as the representative of the county, may, in consideration of forbearance to sue, contract with a creditor of the county for the payment of interest on a county warrant after its registration by the Trustee, until there is money in the treasury to meet it in its regular order, but no longer.

---

FROM DAVIDSON.

---

Appeal in error from the Circuit Court of Davidson County. FRANK T. REID, J.

T. L. DODD for The County.

R. McP. SMITH for Olwill.

COOPER, J., delivered the opinion of the Court.

These are agreed cases, gotten up for the purpose of testing the liability of the county of Davidson for interest upon county warrants, under orders of the County Court, intended to confer upon the holders of the warrants the right to demand and receive interest. The judgment in each case was in favor of the claim of the warrant

holder, and the county in the one case and the County Trustee in the other have appealed in error.

Taking the warrant and the facts agreed in the first of these cases as fairly presenting the question sought to be raised, we find that Thos. S. Marr, for whose use the suit is brought, is the owner of a county warrant, No. 2,518, dated January 25, 1877, duly issued and made payable to P. Olwill, on account of St. Mary's Orphan Asylum, and by him transferred to Marr, for $240. This warrant was presented to the County Trustee for payment, and stamped with the date of presentation, thus: "Registered March 5, 1877, Trustee's office, Davidson County, Tenn."

On January 6, 1880, the County Court made the following order, which was duly entered on its minutes:

"State of Tennessee, Davidson County. At the January Term of said County Court, on the first Monday of said month, the following proceedings were had:

"Whereas, about four years ago the County Judge was instructed by this Court to obtain from Judge Baxter an opinion on the question as to whether county warrants draw interest; and

"Whereas, Judge Baxter did give an opinion in which he decided that county warrants drew interest from date of demand and registration; and

"Whereas, the Justices of the County Court then assembled, in order to stop numerous lawsuits

about to be brought against the county on past
due county warrants, agreed that county warrants
should bear interest at the rate of six per cent.
from the date of registration; and

"Whereas, parties then about to bring suit
stopped all proceedings against the county by rea-
son of the said understanding and agreement; and

"Whereas, numberless suits are being brought
against the county on county warrants; therefore,

"Be it resolved, by the County Court of the
Counrty of Davidson, That all legally issued county
warrants now outstanding, and all county warrants
hereafter issued, shall bear interest at the rate of
six per cent. from the date of registration by
the County Trustee."

It is agreed that in 1875, it being disputed
whether county warrants bore interest, Thos. S.
Marr brought suit against the county on a county
warrant in the Circuit Court, of which the Hon.
N. Baxter was then the Judge, as a test suit, and
on the trial, after argument, recovered a judgment
for the amount of the warrant with interest there-
on, at the rate of six per cent per annum, from
the date of its presentation to the County Trustee for
payment. The Circuit Judge was of opinion, and so
held, that the warrant would bear interest after pre-
sentation. This suit was accepted as a test case by
the county, and to avoid similar suits, the County
Court, at a subsequent quarterly term, during the
year 1875, ordered that thereafter the Trustee of
the County allow interest accordingly, and that he

Davidson County *v.* Olwill.

should procure a stamp wherewith to stamp on each warrant the date of its first presentation to him for payment, which was done. It was the practice of the Trustee afterwards to · stamp the warrants presented, and allow interest from that time. This practice continued until the recent decision of this Court in *Camp* v. *Knox County*, 3 Lea, 199. This order ·of 1875 was, however, not entered on the minutes of the Court. It was reduced to writing, and then duly passed and filed. This has been a frequent practice of the County Court in regard to orders of a legislative character. After the decision of this Court, many suits were brought, and many more threatened, with a view to reduce the claims against the county to an interest bearing form.

In order to prevent the accumulation of costs by suits, and in justice ·to those persons who had forborne to sue in consequence of the previous order of 1875, the order of January, 1880, was passed.

The holders of the warrants now in controversy claim interest on the same from the date· of presentation to the Trustee, being subsequent to the passage of the order of 1875, and at any rate from the 6th of January, 1880, the date of the last order.

The Court below gave judgment for interest from the date of the presentation of the warrant.

In the case of *Camp* v. *Knox County*, this Court held, that the warrant of the Judge, or Chairman

of the County Court, upon the County Trustee for the payment of claims against the county, was only a mode of reaching the money in the county treasury, and could not be treated as negotiable or bearing interest. With the soundness of these conclusions we are thoroughly satisfied. It was expressly said in that case that the power of the County Court to make contracts bearing interest was not involved. The decision only undertook to construe the character and quality of the warrant by which, under the provisions of our statute law, the payment of money out of the treasury was regulated, leaving open for determination the power of the Court to stipulate for the payment of interest, upon a sufficient consideration, as an incident to any contract which the Court could validly make. Other Courts have reached the same conclusions, and made a similar reservation: *Pekin* v. *Reynolds*, 31 Ill., 529; *Chicago* v. *People*, 56 Ill., 327; *Madison County* v. *Bartlett*, 1 Scam., 67; *Allison* v. *County*, 5 Pa. St., 351.

"Every county," says the Code, "is a corporation, and the Justices in the County Court assembled are the representatives of the county, and authorized to act for it." Code, 402.

By the next section it is provided that suits may be maintained against a county for any just claim as against other corporations, the process to be served upon the presiding officer.

Section 404 is: "Each county may acquire and hold property for county purposes, and make all

contracts necessary or expedient for the management, control and improvement thereof, and for the better exercise of its civil and political powers: may make any order for the disposition of its property, and may do such other acts, and exercise such other powers, as may be allowed by law."

These provisions clearly confer upon the county corporate existence, with the right to sue and be sued, and hold property, and with power, through the Justices in County Court assembled, to make contracts touching its property, or for the better exercise of its civil and political powers. Unless controlled by other legislation, the authority would be ample to cover the action of the County Court in the present case, treating what is done as in the nature of a contract in the exercise of its civil power.

By the Code, 4190, 4191, the number of Justices required to make appropriations of public money is prescribed. Section 4215 enumerates the purposes for which appropriations may be made, and section 4216 directs that no appropriation shall be made for any other purpose unless specially provided for by law.

By section 4195 it is enacted: "In making appropriations of money, the vote of the justices present shall be taken by ayes and noes, the Clerk calling and recording the name of each Justice, together with his vote, aye or no, as it is given, which shall be entered on the minutes, together with the items of allowance."

These are wholesome and salutary regulations in regard to the mode of exercising the power of appropriating public money, and limitations of the power itself.

The County Court, as the representative of the county, cannot go beyond the authority delegated to it by the law. The question, therefore, comes to this, can the county, upon a sufficient consideration, contract for the payment of interest on any claim against it for which it is authorized to make an appropriation, and has made the appropriation?

Interest for money as a legal consequence was unknown to the common law: *Cherry* v. *Mann,* Cooke, 268. It has, however, been given by statute on judgments, and on a large class of assignable and negotiable instruments, and upon liquidated accounts signed by the parties: Code, 1942, 1945. It is defined by the Statute to be the compensation which may be demanded by the lender from the borrower, or the creditor from the debtor, for the use of money: Code, 1943. In all cases which are left as at common law, the jury has an equitable power, and may, in the form of damages, give interest, if they think justice demands it: *Cole* v. *Sands,* 1 Tenn., 106. Under our statutes and decisions interest has become an incident of debt after maturity, because either given by positive law, or in the absence of countervailing equity, by the inevitable verdict of the jury, or by the court acting in the place of the jury.

The power to sue and be sued, it has been

held, gives to a municipal corporation the right to
settle or compound claims: *Petersburg* v. *Mappin*,
14 Ill., 193; *Supervisors* v. *Bowen*, 4 La., 24.
Growing out of its authority to create debts and
incur liabilities, a municipal corporation has power
to settle disputed claims against it, and an agree-
ment to pay them is not void for want of consid-
eration: *Augusta* v. *Leadbetter*, 16 Me., 45; *People*
v. *Coon*, 25 Cal., 648. It may annex conditions to a
proposal of settlement: *Merrill* v. *Dexfield*, 30 Me., 157.
If it has obtained a contract which, by mistake
or a change of circumstances, operates oppressively
on the other party, an agreement to make an ad-
ditional compensation or to modify and annul the
contract, is not invalid for want of consideration:
*Bean* v. *Jay*, 23 Me., 117; *Meech* v. *Buffalo*, 29
N. Y., 198. These principles equally apply to a
corporation whose powers are limited whenever the
particular contract is within the power granted.
The rule as to interest on debts against a mu-
nicipal corporation does not ordinarily differ from
that which applies to individuals: *Langdon* v. *Cas-
tleton*, 30 Vt., 285 It has been held in Missouri,
under a statute providing generally that creditors
shall be allowed interest, that county warrants
draw interest from date of presentment: *Robbins*
v. *County Court*, 3 Mo., 57. In other States,
county warrants have been treated as instruments
bearing interest: *Clark* v. *DesMoines*, 19 Iowa, 199.
In this State they are only checks or vouchers,
and do not of themselves bear interest, nor do they

extinguish the original debt for which they may be
given.    The creditor may sue on the original claim,
and in some States he can only sue thereon : *Alli-
son* v. *County*, 5 Pa. St., 351.

With these principles in view, let us see how
the case before us stands.    The County of David-
son is largely in debt, beyond its present means
.to pay, and liable to be sued upon demands, which
have been legally allowed by its representative,
the County Court, properly audited, and for whose
payment warrants have been issued.    If sued, the
expenses of suit must be borne by the county, and
the judgment which will be recovered will certain-
ly bear interest, and the creditor may be also en-
titled to interest on his demand by law, or the
jury may allow him interest by way of damages.
The county might compromise the debt or the liti-
gation.    Why may it not in advance avoid the
expense of litigation by stipulating that it will pay
interest in consideration of the creditors' forbearance
to sue?    The costs of suit would be an incident
of the demand for which the county would be
liable, and the County Court would be compelled
to appropriate the public money.    So, interest on
the debt would be an incident for which an ap-
propriation must necessarily be made · if given by
law, or the verdict of a jury.    An amicable ad-
justment by which interest is conceded in consid-
eration of forbearance is within the competency of
the County Court, whenever it is authorized · to
levy a tax, or appropriate the public money to pay

the debt. And the rule would equally apply to past due obligations as to those now maturing or being created. For, if such obligations were sued upon, the jury would almost certainly give interest by way of damages, the delay to sue having been occasioned by the act of the county in sanctioning the allowance of interest on such claims.

It is obvious, however, that the County Court cannot, by a general order or resolution, make all county warrants bear interest indefinitely. That would be to nullify the decision of this Court, and the policy of requiring the prompt payment of county debts. Moreover, the power to bind the county for the payment of interest is not general, but special, and must be sustained by a consideration. It is, therefore, limited to the forbearance demanded by the public exigency. Strictly speaking, there should be a specific contract upon a definite consideration in each case. The difficulty and expense of a rigid enforcement of this rule in the case before us would neutralize the benefit sought to be obtained. The circumstances may justify a liberal construction of the order of the County Court, with a view to do equity as to the past transactions, where all parties have acted in good faith upon the same conception of their relative rights, and yet not throw open too wide a door for unwarranted license in the future. The County Court can only contract for the payment of interest on the county debt, in consideration of the creditor's forbearance, so long as that forbear-

ance can be held to be for the benefit of the county, and that would only be until there was money in the county treasury to pay the warrant in its regular order: Code, 427, sub-sec. 4. After that, the liability of the county for interest ceases and the creditor must look to the Trustee and his official sureties, who then become liable for the interest, and the liability may be enforced by motion: Code, 3613. The law makes ample provision, by this section and sections 429 and 430, for the enforcement of the creditor's rights. Neither the creditor nor the County Court can charge the county with interest after the money in the treasury, subject to the creditor's call, is ready to meet his demand. The language of the resolution or order of the County Court, so far as it implies more than this for the future, is clearly *ultra vires* and void. The County Court cannot make a contract to pay interest on county warrants beyond the point of time when there is money in the treasury to pay them.

The resolution alleged to have been passed by the County Court in 1875, though never entered on its minutes, was simply void. The County Court must act in the mode prescribed by law. The fact can only be looked to as explanatory of the conduct of the county and its creditors, and as an inducement to the passage of the order or resolution of 1880.

The result is, that the latter resolution or order may be treated as a contract, with existing and

future creditors, for the payment of interest on each of their warrants from the date of registration until there is money in the treasury, after the date of its passage, to pay the warrant, and no longer.

In this view, the judgments in the two cases before us are not erroneous, and will be affirmed.