BENJAMIN F. LANGDON *v.* THE TOWN OF CASTLETON.

*Town Agents. Attorneys. Mode of computing interest upon running accounts.*

When a town agent employs an attorney in a suit in favor of, or against the town, the town is legally holden to pay for the attorney's services without an express vote to that effect; and the rule is the same, if the town agent, being himself an attorney, renders professional services for the town.

And if such a town agent, after his term of office has expired, continues in the management of the suits in which the town are interested, without any objection from, or any express employment by the town or his successor,

Langdon *v.* Town of Castleton.

he is entitled to recover of the town for the professional services rendered after his term of office as town agent has expired.

In ordinary cases when an attorney is employed to take the care and management of a suit, he has a right to consider his employment as continuing to the end of the litigation, unless dismissed by his client.

The town of C. held a public meeting in regard to the proposed alteration, by a railroad company, of the channel of a stream, and passed resolutions directing legal proceedings to be commenced against the company to prevent such alteration. The plaintiff spoke at the meeting in favor of the resolutions, and said he would indemnify the town against all expenses arising from such legal proceedings for six cents. It was the general expectation among the inhabitants of the town, that the expenses of such legal proceedings would be borne by another railroad company, of which the plaintiff was a director, but there was no evidence that this expectation was based on any thing said or done by the plaintiff or any one in behalf of that company. The officers of the town, in consequence of these resolutions, caused a bill for an injunction against the proposed alteration of the stream, to be brought in the name of the town, in which the plaintiff, having subsequently been appointed town agent, rendered professional services for the town as a solicitor. *Held*, that the plaintiff was entitled to recover of the town for such services.

It is settled in this state, that in cases of ordinary running accounts on book, not controlled as to interest by a different contract express or implied, the rule of computing interest is to make annual rests, and to allow interest thereafter on the balance in favor of the party to whom it may be due.

But a party will not be allowed to recover interest upon items of which the other party was ignorant, and the non-payment of which was not owing to any fault of his.

The rule in regard to interest in respect to accounts against towns, does not differ from that governing accounts against individuals.

BOOK ACCOUNT. The plaintiff's account was entirely composed of charges for professional services as an attorney and solicitor, and advances of money in suits in which the defendant was a party.

The following facts appeared from the auditor's report:

The plaintiff was elected by the town of Castleton, their agent to prosecute and defend suits in which that town was interested, and accepted the office for the years 1850–1–2 and 1854, and Chester Spencer was elected to and accepted the same office for 1853, 1855 and 1856.

A large portion of the plaintiff's account was for services and

expenses in a suit in chancery in favor of the defendant against the Rutland and Washington Railroad Company. This company were, in the early part of February, 1850, engaged in the constuction of a railroad in the village of Castleton, and were about to turn the course of a certain stream running through that village.

At a town meeting of the inhabitants of Castleton, duly held on the 20th of February, 1850, for the purpose of taking action in regard to this proposed alteration, two resolutions were adopted, by the first of which, the town of Castleton objected to the proposed turning of said stream, and, by the second, the selectmen and agent of the town were " instructed to take legal measures to gain redress or prevent such turning of the stream by the railroad company, and prosecute such measures, if by law there was any redress or prevention."

The plaintiff was present at this town meeting, and took an active part in procuring the adoption of these resolutions by the town, and made a speech in favor of them while they were under consideration; in the course of which he said, in reply to the objection that the proposed legal proceedings to prevent the turning of the channel of the stream would occasion large expenses to the town, that the town would be successful in them, and would not have any costs to pay, and would be put to no expense in the matter, and that he would indemnify or clear the town from all expenses which would be occasioned by those proceedings, for six cents. At the time of the adoption of these resolutions, there was a general expectation on the part of the inhabitants of Castleton, that the expenses incident to the proposed legal proceedings would be paid or refunded to the town by the Rutland and Whitehall Railroad Company. But it did not appear that this expectation was authorized by anything which was said or done by the plaintiff, who then was one of the directors of the Rutland and Whitehall Railroad Company. Almon Warner, the then town agent, and the selectmen of Castleton, acting under these resolutions, immediately after they were adopted, retained Messrs. Foot & Hodges, attorneys and solicitors at Rutland, as solicitors on the part of said town in the matter of the proposed legal proceedings, and caused a suit in chancery to be brought in the name of the defendant against the Rutland and Washington Railroad Company, for the purpose

of procuring an injunction against the turning of the channel of the stream. This suit in chancery was commenced on the 25th of February, 1850, and was duly entered in the court of chancery in Rutland county, at the April Term next following.

The plaintiff having been appointed at the annual March town meeting in 1850, as the agent of the town to prosecute and defend suits in which the town was interested, and, being an attorney and solicitor in chancery, appeared in the suit and took the principal charge and care of the same, on the part of the town, from the time it was entered in court until its termination. On the 30th of May, 1850, a supplemental bill was filed in the court of chancery, on the part of the town against the Rutland and Washington Railroad Company, with the approbation and at the instance of the proper authorities of the town, the object of which was to prevent the turning of the course or channel of a certain other stream near the village of Castleton, called Hubbardton Brook; the said railroad company being then about to turn the course or channel of the said brook, for purposes connected with the construction of its railroad. The suit was continued and pending in court until the July Adjourned Term, in the year 1852, at which time, the railroad of the Rutland and Washington Railroad Company having been constructed without turning the course or channel of either of said streams, the suit was, by the mutual agreement of the parties interested, discontinued without costs to either party, and this disposition of the suit was made with the knowledge and approval of the selectmen of the town. It appeared that in May, 1851, the plaintiff presented an account to the selectmen of the town for cash paid out by him in the said chancery suit up to that time, amounting to twenty-eight dollars and forty-one cents, and that this account was audited and allowed by the selectmen, and an order was drawn by them on the town treasurer, in favor of the plaintiff for the same, which order was subsequently paid. It also appeared that in the spring of the year 1850, the selectmen of the town employed William B. Gilbert, an engineer, to make a professional examination in regard to the propriety and necessity of turning the channels of the said water-courses, and to give his testimony in relation thereto, to be used in the chancery suit in favor of said town, and that one of the selectmen paid Gilbert ten dollars for his services, which

was subsequently refunded to him by said town. It also appeared that the town had paid to Messrs. Foot & Hodges, who were solicitors on the part of the town in the chancery suit, from the commencement until the final disposition of the same, the amount of their account for services and expenses therein.

It appeared that after Spencer was appointed the agent of the town to prosecute and defend suits in which the town was interested, in March, 1853, the plaintiff continued to take the charge and care of the suits or business of the town then pending in court, as attorney for the town, without any new employment by Spencer or any other officer of the town, but without objection on the part of Spencer or any other officer, and nothing was said by Spencer to the plaintiff in relation to the business which was then pending in court, or in reference to employing or continuing the plaintiff in, or dismissing him from, the care of the same.

The items in the plaintiff's account, charged in the years 1853, 1855 and 1856, were for services rendered during those years in suits in which the town was interested, and in which the plaintiff had taken part as attorney during the years that he had been town agent.

The auditor allowed the whole of the plaintiff's account, and, in computing the amount of the same, made annual rests therein, on the 1st of April in each year, and cast interest on the yearly balances up to the date of his report.

The county court at the September Term, 1857,—KITTREDGE, J., presiding,— allowed all the plaintiff's account as reported by the auditor, except the items of interest, which the court disallowed.

Exceptions by both parties.

The plaintiff, *pro se*, cited on the question of interest *Bates* v. *Starr*, 2 Vt. 536; *Catlin* v. *Aiken*, 5 Vt. 177; *Raymond* v. *Johnson*, 8 Vt. 261; *Williams* v. *Finney*, 16 Vt. 297; *Porter* v. *Munger*, 22 Vt. 191; *Bradley* v. *Pratt*, 23 Vt. 378; 1 Swift's Digest, 715.

*I. T. Wright*, for the defendant,

Cited, on the general question of the right of the plaintiff to recover, *Boyden* v. *Brookline*, 8 Vt. 284; *Soule* v. *Dougherty*, 24 Vt. 92; and on the question of interest, *Abbott* v. *Wilmot*, 22 Vt.

20

Langdon v. Town of Castleton.

437; *Everts* v. *Nason*, 11 Vt. 122; *Houghton* v. *Hazen*, Brayton 133; *Newell* v. *Keith*, 11 Vt. 214; 9 Pick. 369; 1 Am. Lead. Cases, 499–510; *Hoper* v. *Brinton*, 8 Watts, 73; *Haswell* v. *Farmer's & Mechanics' Bank*, 26 Vt. 100.

The opinion of the court was delivered by

POLAND, J. The plaintiff's account consisted wholly of charges for professional services as an attorney and solicitor, and advances of money in suits in which he was so employed.

Various objections are raised by the defendants to the plaintiff's right of recovery upon different portions of the account. The plaintiff held the office of *town agent*, in the town of Castleton, in the years 1850–1–2 and 1854, and it is claimed that his services performed in those years come within the rule laid down in *Boyden* v. *Town of Brookline*, 8 Vt. 284, where it was held that town officers, *as such*, have no legal claim to recover against the town for services, unless by an express vote of the town. But this decision has never been understood as extending beyond strictly *official services*, and when a town agent has employed an attorney to prosecute or defend suits against the town, it has never been questioned, but that the town was legally holden to pay for his services. When a town agent is himself an attorney, and as such, performs professional services in suits where the town is a party, we see no reason why he has not equally a legal claim to be paid; and such, so far as we know, has been the general understanding and practice. The defendants also object that the plaintiff is not entitled to recover for his services in the years 1853, 1855 and 1856, upon the ground that he was not *employed* by the town to perform them.

The auditor reports that in those years, Chester Spencer was town agent of Castleton, but that the plaintiff continued to have the care and management of the suits of the town then pending in court, without objection by the town agent or any officer of the town, but that there was no express employment of the plaintiff by the new town agent.

It would be wholly unreasonable to suppose that the town agent was ignorant of the existence and pendency of suits in which the town was a party, when his official duty required him to see them

properly taken care of, and the fair inference is, that he knew of the plaintiff's employment in them, and was satisfied to leave them under his care and management; and this is equivalent to an employment.

In ordinary cases, when an attorney is employed to take the care and management of a suit, he has a right to consider his employment as continuing to the end of the litigation, unless dismissed by his client, and indeed, he would have no right to abandon it without giving the client seasonable notice ; and we think this principle equally applicable in suits where a town is a party, as in suits of individuals. The defendants also object to the plaintiff's recovery for his services in the chancery suit in favor of the town against the Rutland and Washington Railroad Company, upon the ground that the suit was really brought at the instigation, and for the benefit of the Rutland and Whitehall Railroad Company, in which last named company the plaintiff was a director; and that it was understood by the town and by the plaintiff, that the town was not to be liable for the expenses of the suit.

This objection, if sustained by the facts reported by the auditor, would furnish a very satisfactory reason why the plaintiff should not recover against the town for his services in that suit. It is claimed that all this is fairly to be inferred from what was said and done at a town meeting of the inhabitants of Castleton, holden on the 20th of February, 1850, before said suit was commenced. It appears that the Rutland and Washington Railroad Company were then constructing their road through the town of Castleton, and proposed, in so doing, to turn the channel of Castleton River for some distance, which, for some reason, was objected to by the people of Castleton, and this meeting was called to see what action the town would take to protect the interests of the town. At that meeting it was voted by the town to instruct their agent and selectmen to take legal measures to gain redress or prevent such turning of the river by said railroad company, and prosecute such measures, if by law there was any redress or prevention. Under this vote, the then town agent and selectmen of Castleton procured said chancery suit to be brought by Messrs. Foot & Hodges, and upon the election of the plaintiff as town agent, at the ensuing March meeting, he took the principal care and management of said suit

Langdon *v.* Town of Castleton.

on behalf of the town, and prosecuted the same until July, 1852; when, said railroad company having completed their road without making the threatened change in the channel of the river, said suit was discontinued by the agreement of the parties, and with the knowledge and approval of the selectmen of Castleton.

It does not appear from the report, upon what ground the town of Castleton objected to this change of the river, nor what danger or mischief was apprehended therefrom; but it cannot be assumed that an action was brought in the name, and apparently on behalf of the town, without at least alleging some contemplated damage or injury to the corporate interest of the town, or to the inhabitants of the same.

Nothing appears upon the report to show that this turning of the river was a matter which in any manner concerned the interest, or was likely in any way to occasion injury to the Rutland and White-hall Railroad Company. The only fact stated in the report from which any inference of the kind could be drawn, is, that at the time of the town meeting before mentioned, there was a general expectation on the part of the inhabitants of the town, that the expenses incident, or consequent to the proposed legal proceedings, would be paid or refunded to the town by the Rutland and White-hall Railroad Company.

Whether such expectation was authorized by any one on behalf of said company, is not stated.

It is stated in the report, that at this town meeting the plaintiff was present, took an active part in procuring the adoption of the before mentioned vote of the town, and made a speech in which he stated " that the town would be successful in said legal proceed-ings, and would not have any costs to pay, and would be put to no expense about it, and that he would indemnify the town from all expenses which would be occasioned by these proceedings, for six cents." It does not appear from the report that the plaintiff was acting or speaking in the meeting in any other capacity than as one of the corporators or inhabitants of the town, nor is it claimed that what he said was understood or treated as any contract or guaranty to the town against the expense of the litigation, but only as a strong mode of expressing his belief in the success of the litigation.

Langdon *v.* Town of Castleton.

But it is insisted that what he said was understood and intended by him, and was understood by the town, as an assurance that the expenses would be borne by the Rutland and Whitehall Railroad Company, and that in connection with the fact of his being a director of that company, and the general belief that the company would bear the expense, the town were fully warranted in under-standing that the expenses of the suit would not in any event fall upon the town.   But we think this claim is negated by the finding of the auditor, that this expectation on the part of the inhabitants of the town, did not appear to be authorized by anything that was said or done by the plaintiff.

Whether the plaintiff's services were rendered for the town or for the railroad company, was a question of fact, to be decided by the auditor, and his decision thereon is conclusive.

The suit was commenced by the proper agent and officers of the town, and for aught that appears, for the exclusive benefit of the town.   A supplemental bill was afterwards brought, at the instance of the proper officers of the town, the cash advances made by the plaintiff in the suit were paid by the town without objection during the progress of the suit, the other counsel employed in the suit were paid by the town, the suit was settled with the consent and approbation of the officers of the town, and appears to have been successful, so far as to accomplish the object for which it was brought, which was to prevent the change in the channel of the river.   In our opinion, the facts stated in the report authorized the plaintiff to recover upon this portion of his claim.

The only remaining question arises upon the propriety of the allowance of interest to the plaintiff upon his account.   The audi-tor made annual rests in the account, and allowed the plaintiff interest upon the yearly balances.   The defendants objected to this mode of computing the interest, and the county court refused to allow the plaintiff interest, but gave judgment in favor of the plaintiff for the amount of the account reported by the auditor, without any interest, and to this the plaintiff excepted.   This ques-tion of interest has been very elaborately argued by the counsel for the defendants, and authorities and cases upon the subject very extensively collected and examined.

In the present condition of the law in this state upon that sub-

Langdon *v.* Town of Castleton.

ject, after so many decisions have been made, and so long a course of practice under them as to have produced a very considerable degree of uniformity in the opinions and course of business in the community, we do not feel at liberty to go abroad much, to seek for precedents and authorities to enable us to unsettle existing rules, even though we felt we could establish better ones. Our statute merely fixes the rate of interest, but makes no provision as to cases in which it shall be allowed.

In all contracts where the payment of interest is expressly provided for, there is of course no difficulty.

So too, in all cases where the time of payment is fixed and certain, with no provision on the subject of interest, there is no dispute as to the law. If the party liable to pay, fails to make payment when due, he is liable to pay interest from that time.

The cases and authorities do not all put this liability on the same ground; some say that the interest is given upon an implied contract to pay it, if payment of the principal sum is delayed after it falls due; other cases and judges have said that, in such cases, interest is given as damages, for the detention of the money from the creditor, after he becomes entitled to it by the terms of the contract. It is a matter of no practical importance to debate which is the sounder theory, as the practical result is the same.

The great difficulty arises in cases where there is no fixed and definite time of payment by any express contract between the parties, and especially in cases of running accounts between parties where the items of claims are accruing at short intervals, and perhaps upon both sides for a considerable lapse of time, when there is not only no express contract as to the payment of interest, but also no express contract as to the time of payment or term of credit. In seems to have been settled in England, and in New York, and is so to this day, so far as we know, that in cases of mutual shifting accounts where there was no contract for interest, none would be allowed. But it was held at an early period in Vermont, that the custom and practice of the people in this state had established a different rule on that subject, and those early decisions have not only become established as settled law, but now, by very general consent, have become rules of business. The probable reason of establishing a different rule in this state, was, that a

much larger proportion of the business and credit of the country was performed and kept in the way of ordinary book account, thus requiring the application of substantially the same rules as to interest, that in England and New York were applied to other securities and evidences of debt.

It seems now to be established in this state, that in cases of ordinary running accounts on book, where there is no special agreement as to the time of payment or the payment of interest, and no particular course of dealing between the parties, from which any special contract could be implied, either party is entitled to call upon the other for settlement of accounts annually, and for payment of any balance that may be due him from the other on such settlement. On the basis of this understanding it is also settled that if the party from whom the balance is due neglects to settle and pay such balance, that it shall stand as to interest, on the ground of any other debt falling due and not paid. We regard it now as settled, that in cases of ordinary running accounts on book, not controlled by special contract, express or implied, and unaffected by any special circumstances, requiring the case to be made an exception to the rule, the rule of computing the interest is by making annual rests and allowing interest thereafter on the balance in favor of the party to whom it may be due.

This is substantially the rule laid down in *Bates* v. *Starr*, 2 Vt. 536; *Raymond* v. *Isham*, 8 Vt. 258; *Williams* v. *Finney*, 16 Vt. 297, and many other subsequent cases reported and unreported.

We understand not only that this is the rule generally adopted in practice by business men, but that it has been the rule adopted and practiced upon by auditors and courts in adjusting book accounts between parties for many years.

The cases where interest has not been allowed, are where the case stood upon some peculiar relation of the parties, or special circumstances, making it inequitable to allow interest in this form, and rebutting all presumption that such was the understanding of the parties. Such were *Newell* v. *Keith's Exr.*, 11 Vt. 214, and *Everts* v. *Nason's Estate*, 11 Vt. 122. So in a case decided by this court the last year, where an item of account was not brought into a general settlement between the parties, by some inadvertence of the party to whom it was due, and the existence of the item was

Langdon *v.* Town of Castleton.

not known to the other party, and after the lapse of some years the item was brought forward, it was held the party was not entitled to recover interest, as the defendant was in no fault for not paying it, and the circumstances rebutted all presumption of any such understanding or expectation by the parties. No rule could possibly be established in advance as to what would be sufficient to authorize a departure from the general rule, but each case must be left to stand upon its own peculiar circumstances. The defendant claims that under this general rule the plaintiff should not have interest on his account, for two reasons: first, because the existence of his account was unknown to the town; and secondly, because it was never presented and payment demanded. The first objection, if supported by the report, would be entitled to great weight as a reason for disallowing interest, as it could not well be said the town were in fault for not making payment of a claim they did not know existed, or that any presumption could be raised against them. But the report entirely fails to show any such want of knowledge by the town ; indeed, from the facts reported, it would seem it must have been known by the officers of the town. Nor does it appear from the report that the plaintiff never called on the town for payment, but if it did we should not be prepared to say, as matter of law, that an account against a town, known to the officers of the town, stood upon a different ground from accounts between individuals, and that the plaintiff should not be allowed interest until he presented his account to the town and called for payment. In view of all the facts stated in the report, we think the auditor allowed the interest correctly, and that the county court erred in rejecting it. The judgment of the county court is therefore *reversed* and judgment rendered for the plaintiff, including the interest as computed by the auditor, and as the plaintiff has prevailed on his exceptions, and the defendant has not, the plaintiff will be allowed his costs in this court.