## DAVIS v. SMITH.

*Statute of Limitations. Attorney and Client. Interest.*

An attorney's employment in a suit is continuous, and the Statute of Limitations does not begin to run upon his charges therein till the suit is ended, or his employment otherwise terminated.

While plaintiff was defendant's solicitor in prosecuting a foreclosure suit against P., he purchased P.'s equity of redemption in the premises for his own benefit, and brought a bill to redeem against defendant, wherein it was decided that inasmuch as plaintiff was defendant's solicitor at the time of the purchase, defendant was entitled to the benefit thereof. *Held,* that plaintiff was, nevertheless, entitled to recover for services rendered in the foreclosure suit prior to his purchase, but not for services in making the purchase.

In matters of account, one party may credit the other items that represent a legal indebtedness that should go into the account, and thereby avoid the bar of the Statute of Limitations, although the other party has not charged the items, and insists that they are not to be allowed him.

In mutual accounts, interest is to be cast on the annual balances.

BOOK ACCOUNT. Many of plaintiff's charges were for his services and disbursements as defendant's attorney in divers suits between defendant and one Putnam, and especially in a suit that defendant brought against said Putnam to foreclose the latter's equity of redemption in a certain farm that defendant had sold him, and during the pendency of which, plaintiff had purchased Putnam's equity of redemption therein for his own benefit, and had attempted to redeem by tendering defendant the amount of his claim thereon, and upon defendant's refusal to accept the tender, had brought a bill to redeem, to which defendant made answer, claiming that as plaintiff was his solicitor at the time of his purchase, the purchase should enure to defendant's benefit, which was so decreed. For a fuller statement of facts, see 43 Vt. 269. Item 38 of plaintiff's account was $25 for services in purchasing said equity. This charge was not made till after it was decided that that purchase enured to defendant's benefit. The auditor allowed the item as a reasonable compensation for the services. The auditor cast interest on the yearly balances. All the other facts sufficiently appear in the opinion.

The court, at the June Term, 1875, Ross, J., presiding, rendered judgment on the report, *pro forma*, for the plaintiff; to which defendant excepted.

*T. Bartlett* and *A. F. Nichols*, for the defendant.

*B. N. Davis, pro se.*

The opinion of the court was delivered by

POWERS, J. Several objections to the report of the auditor were made in the court below.

I. The account of the plaintiff is made up principally of charges for services and disbursements as the attorney and so-

licitor of the defendant in sundry suits, and extends over a period of time from 1863 to 1872. A few items of general deal between the parties are also included. The main defence is the Statute of Limitations; and we are led to inquire when that statute begins to run against charges made as these are for professional services in the same cases during a period of several years. If each charge by itself creates a distinct debt, and each successive item of charge as the case proceeds from term to term and court to court, is the creation of a new debt for a new service, it would be clear that the statute would begin to run from the date of each successive charge. But it is apparent that in the progress of litigation the attorney acts under one employment. He may call on his client for pay from time to time, and would be justified in quitting his service, perhaps, if his client failed to furnish him with funds; but by his retainer in a cause, he is employed to pursue the litigation until the cause is ended, unless sooner discharged by his client's direction or his client's fault. When the plaintiff was retained in the Chase and the Putnam suits, the parties had made an entire contract of employment, to continue to the end of those suits. This doctrine is abundantly fortified by both English and American decisions. Lord LYNDHURST, in delivering the opinion of the court in *Harris* v. *Osbourn*, 2 C. & M. 628, says: "I consider that when an attorney is retained to prosecute or defend a cause, he enters into a special contract to carry it on to its termination." To the same effect is the language of Barons PARKE and ALDERSON. in the same case. The doctrine of this case was reaffirmed in *Nicholls* v. *Wilson*, 11 M. & W. 105; and again by the same court in 1852 in *Whitehead* v. *Lord*, 7 Exch. 691, when the retainer was in a suit in chancery. The same doctrine has been advanced by this court. In *Langdon* v. *Castleton*, 30 Vt. 285, the question was directly presented, and POLAND, J., uses the following language: "In ordinary cases when an attorney is employed to take the care and management of a suit, he has a right to consider his employment as continuing to the end of the litigation, unless dismissed by his client; and indeed he would have no right to abandon it without giving his cli-

ent seasonable notice." The same doctrine prevails in New York. *Mygate* v. *Wilcox*, 45 N. Y. 306.

Such being the nature of the plaintiff's employment in the Chase and the Putnam suits, it would seem to follow as a necessary corollary, that the Statute of Limitations would begin to run upon the charges in those suits from the time the plaintiff's services ended either by the termination of the litigation or by his dismissal therefrom.

In the cases of *Whitehead* v. *Lord*, *Harris* v. *Osbourn*, and *Mygate* v. *Wilcox*, *supra*, the question was directly involved, and the court, for the reason that the contract of employment was "continuing and remained entire," held that the statute only runs from the end of the employment. See also *Foster* v. *Jack*, 4 Watts, 344; 2 Chitty Cont. (11th American ed.) 1230; 3 Parsons Cont. (5th ed.) 93; *Hancock* v. *Pico*, 47 Cal. 161. The learned counsel for the defendant has cited no case where a different doctrine is laid down, and it is believed that none can be found.

The auditor reports that the charges in the Chase suit ended within six years of the commencement of this suit. Such charges draw after them all the earlier charges in that suit, and all are saved from the bar of the statute.

II. The defendant insists that the plaintiff cannot recover any of the items of charge in the Putnam suits, because of his purchase of Putnam's equity in 1866, which purchase was held by this court to enure to the defendant's benefit. See report of the case between these parties, 43 Vt. 269.

The defendant does not base his objection to these items upon the ground of the plaintiff's negligence in the service for which the charges are from time to time made, but upon the distinct and somewhat novel ground that by that purchase the plaintiff *forfeited* all claim for pay for his services rendered prior to such purchase. If it were a case where the plaintiff's negligence was set up as a defence, we should require proof of such negligence and the consequent injury, before the defence could be allowed

as an answer to the claim for pay, and the case is wholly destitute of such proof.

Did the purchase of Putnam's equity *ipso facto* work a forfeiture of the plaintiff's right to recover for his earlier charges in the Putnam suits? We think not. The purchase by the plaintiff of the interest of Putnam in the farm, was a valid and legitimate transaction as against the whole world except the defendant, and good against him, unless by some positive act within some reasonable time, he saw fit to disaffirm it, and take the benefit to himself. The purchase was not void, but voidable at the election of the defendant. *Jackson* v. *Van Dalfsen*; 5 Johns. 43; *Wilson* v. *Troup*, 2 Cow. 196; *Hyndman* v. *Hyndman*, 19 Vt. 9. This is the general doctrine upon the subject; and it is not founded upon the theory that an actual fraud has been committed and an actual injury done. "The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it." It is founded in that equity which reaches all persons who stand in relations of trust and confidence to others; and turns them away from the power of abusing the confidence reposed in them, by making their acts enure to rightful purposes.

The plaintiff, as the defendant's solicitor in the Putnam suit, had the right to make the purchase of Putnam's equity, subject to the defendant's right to claim the advantage of such purchase if he desired. The defendant exercised his right, and claimed the purchase for himself, and that is all the penalty there can be visited upon the plaintiff. There was no inherent turpitude in the transaction; and we all agree that there was nothing in the case that warrants the reflections cast upon the plaintiff's conduct in the argument.

The item of twenty-five dollars charged by the plaintiff cannot be allowed, as this charge grows out of the transaction which the defendant disaffirms, and the plaintiff is not allowed to reap any advantage from it. The remaining items of charge in the Putnam suits, as allowed by the auditor, are unaffected by the purchase of the Putnam right.

III. The defendant objects to items 9 and 11 in the plaintiff's

specifications of credit, on the ground that they are fictitious, and represent no valid indebtedness of the plaintiff to the defendant. The report of the auditor is quite meagre in relation to these items. It is not claimed that the plaintiff could give an arbitrary credit in his account, for the purpose of avoiding the bar of the Statute of Limitations; and it is equally true that the defendant cannot gain the advantage of such bar, by neglecting to charge in his account a proper indebtedness existing in his favor against the plaintiff. The true inquiry is, whether the item represents a legal indebtedness that *should* go into the accounts of the parties, and not whether either party has or has not, in fact, embraced the controverted item in his account. The auditor says that he "finds the two items referred to (9 and 11) are such that the defendant could legally charge them to the plaintiff, and the plaintiff would be bound to pay a reasonable price for the services rendered, and the auditor sees no impropriety in the plaintiff's giving credit to the defendant, even if defendant, for some cause, does not place any account therefor against the plaintiff." It would have been more satisfactory if the auditor had stated specifically whether he found a contract express or implied between the parties in relation to these charges; but we cannot see how the defendant could "legally charge them to the plaintiff," and the plaintiff would "be bound to pay," unless the auditor found such contract. We conclude that he did find an indebtedness, and therefore "saw no impropriety in the plaintiff's giving the credit." As the report stands, we think these credits must be treated as valid, and properly entered in the accounts of the parties, and thus the defense of the Statutes of Limitations fails. The mode of computing interest adopted by the auditor is the correct one. *Langdon* v. *Castleton, supra.*

The result is, that item 38 of the debit side of the plaintiff's account, is disallowed. The remaining items on both sides of the account were correctly disposed of by the auditor.

Judgment reversed, and judgment for plaintiff for the amount of his account as found by the auditor, deducting item 38 and interest on it, with interest from date of the report.