## COLE *v.* ROBY.

*(Supreme Court, General Term, Fifth Department.* October 23, 1890.)

OPINION EVIDENCE—PARTIAL STATEMENT OF FACTS.

In an action to recover for services rendered as an attorney, defendant contended that plaintiff was guilty of negligence in not taking an appeal from the judgment in the action in which plaintiff was defendant's attorney. It appeared that plaintiff had twice written to defendant, stating that the findings of the referee on which judgment was entered were erroneous, and advising an appeal, and finally received a letter from defendant before the time to appeal had expired, directing him to take an appeal. Plaintiff contended that, after writing the letters advising an appeal, he discovered that he was in error in supposing the findings to be erroneous. There was no evidence that the findings were not erroneous in the particulars mentioned by plaintiff in his letter to defendant, except the testimony of the referee who tried the case, and of counsel therein. *Held,* that it was error to allow plaintiff to testify that "on a subsequent investigation I discovered that I was in error in making that statement," (that the findings of the referee were erroneous,) though he also stated wherein he thought that he was mistaken, but failed to give details, since it could not be said how far his expression of opinion influenced the jury.

Appeal from circuit court, Cattaraugus county.

Action by George W. Cole against Sidney B. Roby to recover for legal services rendered by plaintiff and his partner to defendant. There was a judgment on a verdict for plaintiff, and an order was entered denying a motion for a new trial, and defendant appeals. For former report, see 7 N. Y. Supp. 952.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*James G. Johnson,* for appellant. *George W. Cole, pro se.*

CORLETT, J. In 1886, the respondent employed Ansley & Davis, a firm of lawyers at Salamanca, to collect a claim against Frank J. Grief for the alleged amount of $1,200. The demand was evidenced by an instrument in writing, purporting on its face to be an absolute transfer of buggies, etc., for the consideration of $945. It was claimed by the plaintiff in that action that the instrument was a chattel mortgage, while the defendant contended that it was an absolute sale of the goods for the price stated. Ansley & Davis treated it as a mortgage, and caused the articles to be sold at public auction. The sale resulted in a large deficiency. The plaintiff then directed an action to be brought against the defendant therein to recover this deficiency. Afterwards, the defendant in this action consented that the plaintiff take charge of his case instead of the original attorneys. He did so, and the action was referred to J. S. Whipple, Esq., an attorney of Salamanca, before whom the plaintiff tried the case assisted by his partner, Inman, with the defendant's consent. The referee reported in favor of the defendant. Judgment for costs was entered about the 7th of January, 1887.

The complaint in this action was to recover for legal services rendered by the plaintiff and his partner for the sum of $150. There was a second count wherein the plaintiff claimed an additional sum of $25 for services, which was not controverted on the trial. The answer alleged in substance, among other things, that the plaintiff improperly neglected to bring an appeal from the judgment entered upon the report of the referee, whereby he sustained great damage. On the 8th day of January, 1887, the plaintiff served a copy of the referee's report on the defendant, and, at the same time, sent him a letter of which the following is a copy:

"J. J. INMAN.
"G. W. COLE.

"SALAMANCA, N. Y., January 8, 1887.

"*Sidney B. Roby, Esq.*—DEAR SIR: Inclosed we send you a copy of the report of the referee in the case of yourself against Frank J. Grief. By it you will see that the referee not only beat us on the question of the bill of

sale, but he beat us out of what we were entitled to recover, even upon the theory that the bill of sale was absolute. The figures showed that we were entitled to recover something over two hundred dollars in any event. His findings of fact in the report are not supported by the evidence in the case. He relied upon a statement of account made out by you to Grief, October 8, 1885, as the basis upon which to determine the amount due; but even then you were entitled to recover about two hundred dollars, or a little more, even upon the supposition that the bill of sale was an absolute one. He finds that the note of $104, given July 4, 1885, and which you afterwards took up [Klager note] on December 5th or 15th, was paid by the maker, Mr. Klager. The evidence of yourself shows that it was not paid by him, and there is no evidence disputing that fact. There is also a note made by Klager on the 20th of April, 1885, for $125, payable in seven months, and which became due November 25, 1885. He does not find that note became due after the issuing of that statement. It did in fact become due after that statement was issued, and was charged back to him, having been once credited to him at the time of its receipt by you. This is also error. The report and findings are unsupported by the evidence, and the case ought to be appealed, and the judgment reversed, and a new trial obtained before another referee. Please let us know what you desire to have done with the matter. This is radically wrong. The figures show that you are entitled to a judgment to something over two hundred dollars in any event, and, if we get a new trial, we do not believe any other referee would find against you on the question of the character of the bill of sale. Hoping to hear from you soon, we remain

"Yours, truly,                                    INMAN & COLE."

The defendant did not reply to this, and on the 28th of February, 1887, the plaintiff wrote the defendant another letter, of which the following is a copy:

"SALAMANCA, N. Y., February 28, 1887.

"*Sidney B. Roby, Esq.*—DEAR SIR: About January 8th, we wrote you, sending a copy of the referee's report in your suit with Grief, and asked you what you wanted done with the matter, and we assumed that you received the letter. As we have not heard from you in reply, and thinking it possible that you did not receive our letter, we write you again, for the time within which to appeal, should you desire to do so, has very nearly expired. Will you reply at once?

"Yours, truly,                                    INMAN & COLE."

In response to which the defendant telegraphed the plaintiff as follows:

"ROCHESTER, N. Y., March 5, 1887.

"*To Inman & Cole, Salamanca, N. Y.:* Have decided to appeal. Please take necessary steps, and advise                     SIDNEY B. ROBY."

In reply to which, and on the 7th day of March, the plaintiff wrote the defendant a letter, of which the following is a copy:

"SALAMANCA, N. Y., March 7, 1887.

"*Sidney B. Roby, Esq.*—DEAR SIR: Your telegram directing me to appeal was received Saturday evening, 5th inst., but it came too late, as the time within which to appeal has expired. We should have been informed some time ago, as it requires some time to prepare case and exceptions. The time, however, has expired, and your delay in instructing us to appeal is to be regretted.

"Yours, truly,                                    INMAN & COLE."

In fact, the time to appeal had not expired when the plaintiff wrote, and would not for two or three days. He had plenty of time after receiving the telegram to perfect the appeal. The action was first tried before Justice DANIELS and a jury in September, 1888, and resulted in a verdict for the plaintiff. The trial justice granted a new trial, and wrote an opinion which was to the effect that under the evidence the verdict should have been the other way. The order granting the new trial was affirmed by this court. 7

N. Y. Supp. 952. The case was again tried before Justice CHILDS and a jury in February, 1890. It resulted in a verdict for the plaintiff. A motion for a new trial was made and denied, and the defendant appealed from that order, and the judgment entered upon the verdict. The only way in which what occurred on the trial before the referee appeared was by the testimony of witnesses sworn on this trial. There is nothing showing what appeared on the trial before Justice DANIELS, except his opinion granting the new trial. It will be observed that the plaintiff's letter when he sent the referee's report expresses strong confidence that the judgment entered upon the report could be reversed for the numerous reasons therein stated. The plaintiff adhered to these views until the close of the correspondence, for in his last letter he says: "The time, however, has expired, and your delay in instructing us to appeal is to be regretted." It was held on both trials that the omission to perfect the appeal was an act of negligence. In other words, he was guilty of a breach of professional duty in that respect. It requires no argument to prove that the steps necessary to be taken, including time, are peculiarly within the province of the attorney. He owes active diligence to his client, who has a right to assume that he will be properly advised in reference to all matters which relate to the legal business intrusted to his attorney. At what time he ascertained that he was in error in advising the defendant that he had good grounds for appeal does not clearly appear. The plaintiff was sworn as a witness on his own behalf, and, after testifying to his employment, and the satisfactory character of his services until after judgment, he was asked on his own behalf, the following question: "Were you in error in stating that the plaintiff was entitled in any event to recover $200?" This was objected to and overruled, and exception taken, and the witness answered: "On a subsequent investigation, I discovered I was in error in making that statement." The plaintiff then proceeds to state wherein he thought he had fallen into an error, but he enters into no details. Judge Vreeland, the counsel for the defendant on the trial before the referee, gives some evidence tending to show that the report was correct. The referee also gives testimony tending to support his findings. The report of the referee appearing in the case throws no light upon the particular findings criticised by the plaintiff when he first wrote the defendant; nor does the plaintiff state what the defendant's accounts showed upon which he stated the referee predicated his findings, but he does say in that letter advising an appeal, that the defendant's accounts, if taken as true, would have required a report in his favor of $200 in the action before the referee. This matter was not explained upon the trial from which this appeal is taken. The question above quoted, to which objection was made, and exception taken, simply asked for the opinion or conclusion of the witness. It is true that he stated he was in error in some particulars, but he omits to explain all the alleged errors for which he advised the appeal in his letter. The question itself did not call for facts, but an opinion or conclusion; and, when the facts stated failed to embrace all of them, it is impossible to say how far his general answer influenced the jury. It is obvious that the counsel on the other side, Judge Vreeland, would naturally, so far as consistent with the truth, favor the referee's findings; also that the referee would desire to have it appear that he reached a proper conclusion on the evidence submitted to him. As no appeal was taken in pursuance of the defendant's directions, and as exactly what occurred on the trial before the referee did not appear, it is not easy to see whether the plaintiff was mistaken when he strongly advised an appeal. If he had obeyed instruction, and taken an appeal, the case would have shown what occurred before the referee, and this court could have intelligently determined whether the referee fell into errors, which required a reversal. The explanation of the plaintiff on the trial fails fully and clearly to show whether he was in error in his advice about bringing an appeal. It was

his duty to bring one when so directed, and cogent reasons should be given showing that the omission occasioned no damage. The reasons assigned for a new trial by the trial justice before whom the cause was first heard are not satisfactorily answered by the plaintiff. The courts cannot be too careful in exacting diligence on the part of attorneys in protecting the interests of their clients. It was agreed by each of the learned justices on the trials that a reversal would have shown sufficient evidence of damage; and, unless the plaintiff was very much mistaken in what he said before he wrote that the time to appeal had expired, there are strong reasons for supposing that an appeal would have resulted in a new trial. The question as to whether errors requiring a new trial were fallen into is one of law for the court, which cannot be properly disposed of by a jury. It is not easy to see how the jury could have intelligently determined that question in the absence of a full and accurate statement as to what occurred on the trial. In the presence of such a statement, the trial justice could have instructed the jury upon the law of the case, and any error which he might have fallen into would be reviewable in this court. But, where the legal questions are transferred in a general way to the jury, it cannot be known with accuracy upon what the verdict turned.

It seems to have been assumed on the trial that the question as to whether the contract was entire was not involved. The court proceeded upon the assumption that the plaintiff was entitled to a verdict, unless damages were proved by way of counter-claim. It is true that the answer claims such damages; it is equally true that it alleges a wrongful omission on the part of the plaintiff to take an appeal, and the court in substance held that the answer in that respect was true. If such was the case, the contract being entire, the cases indicate that a wrongful omission to obey instruction would defeat a recovery for past services. *Chatfield* v. *Simonson*, 92 N. Y. 209–215; *Tenney* v. *Berger*, 93 N. Y. 524; *Andrews* v. *Tyng*, 94 N. Y. 16. It need not be said that an attorney has no right to abandon his client's case without giving him reasonable notice. *Langdon* v. *Castleton*, 30 Vt. 285. It is true that an attorney may call upon his client for pay from time to time, and would be justified in quitting his service if he failed to furnish him with funds. But by his retainer he is employed until the litigation ends, unless sooner discharged by his client. *Harris* v. *Osbourn*, 2 Cromp. & M. 628; *Nicholls* v. *Wilson*, 11 Mees. & W. 105; *Langdon* v. *Castleton*, 30 Vt. 285; *Davis* v. *Smith*, 48 Vt. 52; *Mygatt* v. *Wilcox*, 45 N. Y. 306; *Scott* v. *Elmendorf*, 12 Johns. 317. In this case there is no question about the retainer; nor is there any claim of a demand of payment while the litigation proceeded, or a wrongful request to bring an appeal, or that the attorney did not wrongfully bring one. There is no claim that, upon any ground, the attorney desired to abandon the case. Under such circumstances, it may well be doubted whether the plaintiff could recover. He should be either required to show substantial performance or a good reason for his omission. There are many cases where, by the terms of the contract, payment may be exacted as the work progresses, in order to enable the laborer to complete his job. But where such is not the express condition of the contract, and no request for payment is made, and there is a wrongful failure to complete the job, and the contract is entire, the above cases are to the effect that a wrongful omission may defeat recovery. While it is true that the answer claimed damages by way of counter-claim, it is equally true that it alleges facts showing nonperformance by the plaintiff. The case was disposed of at the trial upon a wrong theory. The telegram having reached the plaintiff in time to enable him to bring an appeal, the court would have power after it was brought to grant time for preparation of the case, or to file exceptions. A new trial must be granted, with costs to abide the event. All concur.