EDWARD YEARTEAU v. BACON'S ESTATE.

CHITTENDEN COUNTY, 1892.

Before: TAFT, ROWELL, MUNSON AND START, JJ.

*Contract to board illegitimate child. Interest. Intoxicating liquor. Recovery of money paid for intoxicating liquor. Action survives. Original package. Evidence.*

1. The plaintiff contracted with the intestate to board the illegitimate daughter of the intestate, there being no specification as to the duration of service or time of payment. Under this contract the plaintiff took the daughter into his family at five years of age and kept her until she was twenty-one years of age, during which time the intestate made but seven small payments, and the plaintiff never made any demand for payment. *Held.*

   *a.* That the plaintiff could recover for board after the daughter became of age as well as before.

   *b.* That interest should be computed from the end of each year.

2.  Evidence that the intestate had settled with the mother of the illegitimate child before the making of the alleged contract is too remote to warrant a reversal of judgment for its rejection, where it appeared that the child was in the possession of the father at the time it was made, although the mother had previously married the plaintiff and was then living with him as his wife.

3.  The right of action to recover money paid for intoxicating liquor unlawfully sold survives.

4.  Such right of recovery is not affected by the fact that the liquor was, to the knowledge of the parties, sold and delivered in this state for the purpose of unlawful sale here.

5.  A resident of Vermont might under the federal constitution, before any federal legislation upon that subject, lawfully import from another State and sell in Vermont intoxicating liquor in the original package.

This was an appeal from the disallowance of commissioners appointed for the allowance of claims against the estate of Joseph Bacon.  The plaintiff filed a declaration in book account as to a part of his claim, and in general assumpsit as to the balance.  The first action was heard at the September term, 1892, Ross, Ch. J., presiding, upon the report of an auditor.  The second was tried by jury at the same term before the same court and resulted in a verdict and judgment for the plaintiff.

In the first action the plaintiff sought to recover for boarding an illegitimate daughter of the intestate.  The intestate was the father of an illegitimate daughter of whom the wife of the plaintiff was the mother, she having married the plaintiff when the child was some three or four years of age.  The auditor found that soon after the marriage the intestate brought the girl to the plaintiff's house and left her there under an arrangement that the plaintiff was to board her for ten dollars a month, nothing being said as to the duration of the service or the terms of payment; that under this arrangement the girl remained at the plaintiff's house and was supported in his family until she was twenty-one years of age;

that the intestate made the plaintiff only two small payments on this account, one in 1883 and the other in 1884 ; that the plaintiff made no demand of payment or settlement until 1888, when payment was refused, and he brought a suit which was abated by the death of the intestate.

The defendant offered to show that previous to the making of the alleged contract he had fully settled with the mother, and that she had no further claim upon him. The auditor rejected the evidence and the defendant excepted to his report upon this ground.

The court overruled the exceptions of the defendant to the report and gave judgment for the plaintiff for the amount due under the contract up to the time the daughter became of age. Both parties except.

In the action of assumpsit the plaintiff sought to recover the amount of certain payments for intoxicating liquor. It appeared that the plaintiff was a retail liquor dealer and the intestate a wholesale liquor dealer in the city of Burlington during the time covered by these transactions ; and that the liquor in question was bought by the plaintiff and furnished by the intestate with the expectation and purpose that it was to be unlawfully sold. No demand was made by the plaintiff previous to the presentation of his claim to the commissioners. It appeared that a part of the liquor was beer brought by the intestate from the state of New York and sold to the plaintiff in the original barrel or cask.

The defendant moved the court to direct a verdict, 1st, because the right of action did not survive ; 2d, because the parties were *in pari delicto*, in that it was the understanding of both that the liquor was to be unlawfully used.

The court overruled the motion and the defendant excepted.

The defendant requested the court to instruct the jury that no recovery could be had without a previous demand, and

that no recovery could be had in respect of any liquor in the original package.

This the court declined to do and the defendant excepted.

The jury under direction of the court returned a special verdict showing the amount of beer furnished the plaintiff in the original package.

*H. S. Peck, Seneca Haselton, W. L. Burnap* and *Henry Ballard* for the defendant.

No interest should be allowed on claim for boarding child. *Evarts* v. *Nason*, 11 Vt. 223 ; *Abbott* v. *Wilmot*, 22 Vt. 440 ; *Sprague* v. *Sprague Est.*, 30 Vt. 491 ; *Baker* v. *Cent. Vt. R. R. Co.*, 56 Vt. 302 ; *Wolf* v. *Mathews*, 98 Mo. 246 ; *Hunt* v. *Nevers*, 15 Pick. 505 ; *Goff* v. *Rohoboth*, 2 Cush. 478 ; *Gay* v. *Rooke*, 151 Mass. 115 ; *McIlvaine* v. *Wilkins*, 12 N. H. 474 ; *Walden* v. *Sherbrooke*, 15 John. 407 ; *Adams Express Co.* v. *Milton*, 11 Buch. 49 ; Devens, J., 151 Mass. 115 ; *Tebo* v. *Ballard*, 36 Vt. 612.

The fact that the intestate had settled with the mother was competent. *Nash* v. *Doyle*, 40 Vt. 100 ; *Danforth* v. *Streeter*, 28 Vt. 490 ; *State* v. *Howard*, 32 Vt. 380 ; *Eddy* v. *Davis*, 34 Vt. 209 ; *Barker* v. *Bennet*, 58 Vt. 476.

The action to recover money paid for intoxicating liquor is penal and does not survive. *Thayer* v. *Partridge*, 47 Vt. 423 ; *Nichols* v. *Bellows*, 22 Vt. 581 ; *Lafountain* v. *Savings Bank*, 56 Vt. 333 ; *Benson* v. *Edgerton*, Bray. 21 ; *Blaine* v. *Curtis*, 59 Vt. 120 ; *Hubbell* v. *Gale*, 3 Vt. 267.

No recovery could be had for the beer sold in the original package. *Leisy* v. *Hardin*, 135 U. S. 100 ; *Collins* v. *Hill*, 3 L. R. A. 110.

The parties were *in pari delicto*. *Hall* v. *Corcoran*, 107 Mass. 251 ; *Bliss* v. *Brainerd*, 41 N. H. 256 ; *Worcester* v. *Eaton*, 11 Mass. 368 : *Burt* v. *Place*, 6 Cow. 431 ; *Webster* v. *Munger*, 8 Gray 587.

*C. M. Wilds* and *E. R. Hard* for the plaintiff.

The right to recover money paid for intoxicating liquor survives. The money is assets belonging to the plaintiff, and that he bought the liquor for an unlawful use himself is of no consequence. *Adams* v. *Goodnow*, 101 Mass. 81; *Orcutt* v. *Simons*, 107 Mass. 382.

The action is remedial, not penal. *Hubbell* v. *Gale*, 3 Vt. 270; *Wheatley* v. *Waldo*, 36 Vt. 237; *Roberts* v. *Burton*, 27 Vt. 396,

The estate having been benefited must respond. Wm's. Exrs. 1,730; Sch. Exrs. and Adrs. s. 372; *Cravath* v. *Plympton*, 13 Mass. 454.

The case of *Leisy* v. *Hardin*, 135 U. S. 100, does not apply to a citizen of the state where law is being violated.

The opinion of the court was delivered by

MUNSON, J.   The charges on book are for the board of an illegitimate daughter of the deceased from the fifth to the twentieth year of her age. The auditor finds that the plaintiff agreed to board the child " for the sum of ten dollars per month," but that nothing was said as to the length of service or the time of payment. The credits are seven small payments, irregular both in date and amount. No bill was presented nor other demand of payment made until the fall of 1888.

The court below confined the plaintiff's recovery to the board of the daughter during her minority. We think this restriction was error. The circumstances under which the arrangement was made afford no ground for holding that the parties contracted with reference to the statutory period of emancipation. The putative father had not been placed under any legal obligation to provide for the child's maintenance. The natural affection or sense of moral obligation which led him to do so would not be determined by the arbi-

trary line which the law has drawn as the limit of incapacity. The daughter's inability to provide for herself in any occupation which the father might wish her to pursue may have been as great just after eighteen as just before. The contract itself was without terms of limitation, and it is not found to have been terminated by the action of either party. If there were any circmstances from which it could be inferred as a matter of fact that the deceased had taken this action, it was for the auditor to draw the inference. We see no ground on which the court can say as matter of law that the contract ended upon her becoming of age.

The judgment below includes interest on each sum of ten dollars from the end of the month for which the charge is. made. It is contended in behalf of the estate that interest can be allowed only from the time payment was demanded. It thus becomes necessary to determine upon what basis interest is allowable on a claim of this character. Our rules. regarding the allowance of interest were developed in special recognition of the situation of our people and their methods of business, and are somewhat at variance with those that prevail in other jurisdictions. As long ago as the decision in _Langdon_ v. _Castleton_, 30 Vt. 285, it was said that these rules had become so well established by repeated decisions, and had come to be so thoroughly understood and generally relied upon by the community, that they ought not to be unsettled upon the authority of foreign precedents. These considerations have acquired additional force with the lapse of time, and the disposition of any case now arising should certainly be in harmony with our previous decisions.

It is the fundamental principle of our decisions that interest is to be allowed on whatever remains unpaid after it has. become the debtor's duty to pay it. The solution of the question presented lies in the proper application of this doctrine. Our attention has been specially directed to two cases. as helpful in determining the application. In _Newell_ v.

*Keith*, 11 Vt. 214, the charge was for general advice and assistance extending through a series of years and until the death of the debtor, and was presented to the commissioners in gross on the basis of fifteen dollars per year; and it was held that interest should be allowed only from the debtor's decease. In this case there was no fixed compensation for any particular service, no information given the debtor as to what the charge would be, no charge in fact made by the creditor until the service was completed, and no certainty that the creditor would finally take the proper compensation which the debtor had said she expected to pay. It is apparent that here it was the duty of the creditor to present his demand if he desired payment, and that the debtor could not be in default until this was done. In *Tebo* v. *Ballard*, 36 Vt. 612, there was a contract for nine months' service at a certain price per month, and the service having been interrupted by sickness, suit was brought before the end of the term to recover the amount earned; and it was held that the suit was prematurely brought. In the opinion it is said: "In contracts of this kind, where there is no time stipulated when payment for service is to be made, the law implies that it is to be made at the end of the term." But the cases referred to are those where the contract is for a specified time, and where ordinarily no part of the compensation is collectible unless the contract is fully performed, and where consequently no part of the compensation can be held to be payable until the term of service is completed.

It was early considered in this State, in cases where items of account were accruing at short intervals, and for a considerable period of time, and where there was no understanding as to time of payment or compensation for delay, that interest should not be computed on each item from its date, but that on the other hand it should not be denied for the whole time that settlement was delayed. The result was the establishment of a rule that in cases of ordinary running

accounts, where there was no understanding to the contrary, express or implied, annual rests should be made and interest allowed on the balance from each annual rest. In these cases the law implies a contract to pay interest on whatever may remain unsatisfied after the expiration of a year; on the ground that a year is by common understanding the usual period of credit in matters of open account, and that the party in debt should have seen to the adjustment of the account at that time, and upon his failure to do so may properly be held to have contemplated the subsequent accruing of interest. A common application of the rule has been in cases of store and shop accounts, and accounts for miscellaneous services not rendered under special contract, without regard to the existence of counter demands. The rule has been mainly discussed, however, in its application to cases of mutual deal, where the balance varies from time to time, and where the book of neither party will ordinarily contain the whole account, and perhaps neither party be able to say how the account stands at any given time. *Bates* v. *Starr*, 2 Vt. 536; *Wood* v. *Smith*, 23 Vt. 706; *Brainerd* v. *Champlain Trans. Co.* 29 Vt. 154; *Langdon* v. *Castleton*, 30 Vt. 285; *Birchard* v. *Knapp's Est.* 31 Vt. 679; *Goodnow* v. *Parsons*, 36 Vt. 46; *Sumner* v. *Beebe*, 37 Vt. 562; *Carpenter* v. *Welch*, 40 Vt. 251.

But the rule has not been restricted to accounts of the nature above described. In *Spencer* v. *Woodbridge*, 38 Vt. 492, it was applied in a case very similar to this. In that case the plaintiff was employed by the defendants at a fixed monthly salary, and remained in their service some over three years. The plaintiff presented no bill until just before the bringing of the suit, and it was insisted that he was entitled to interest only from the time of the demand. The plaintiff had at different times called for money on account and had failed to obtain it, but this fact was given no bearing except as showing that the defendants had knowl-

edge of the account. The whole reasoning of the court was upon the ground of the rule above considered; and it was held that " as the parties should settle as often at least as once a year, interest will be allowed on the annual balances due."

The period of a month was named by the parties to this contract only as a measure of the compensation, and not to fix the time of payment. No question can arise as to the completion of the service being the time of payment, for the contract was not for any definite period. But the contract having continued for a series of years, and a demand having then been made, the question is presented whether the law will treat the debtor as under an obligation to pay at the end of every month, or at the end of every year, or not until demand. Doubtless the plaintiff could have terminated the contract or have compelled its modification at any time, and so have controlled the time of payment. But the mere asking for money before the expiration of a year would not entitle him to interest upon it from the time of asking, if he suffered the contract to go on as before. On the other hand, his right to have interest allowed from the end of each year in no way depended upon his calling for payment. There is no feature of the case which can be held to have entitled the debtor to any information, notice or demand. He knew. that the service contracted for had been rendered and that his obligation to pay for it was complete. It was his duty to attend to the payment, after the expiration of the usual period of credit, if he did not wish to become chargeable for interest. But while we do not think the creditor should be denied interest because of his neglect to demand payment, we do not consider that the debtor should be charged with interest from the end of each month because of the failure to settle monthly. We think that upon a contract of this character it would be contrary to the general tenor of our decisions, either to compute interest from the close of each month,

or to deny interest for the whole time that payment was deferred. We see no reason why the rule of annual rests may not be applied in this case as properly as in the case of *Spencer* v. *Woodbridge*.

The mother of this child married the plaintiff when the child was between four and five years old, and about fourteen months after the marriage the deceased left the child with the plaintiff at his house, as the plaintiff claimed in pursuance of the agreement found by the auditor. The defendant offered to show, as bearing upon the probability of there having been such an arrangement on the part of the deceased, that at some time before the marriage he had paid the mother such damages as it was agreed she could have recovered against him under the statute relating to bastardy. We think the evidence offered had so little bearing upon the issue in controversy that its exclusion was not error. It is apparent from the report that the child had been in the keeping of the father previous to its being taken to the plaintiff's house. If the mother had continued to support the child from the time of the settlement, and had taken the child with her to the plaintiff's house upon her marriage, so that its stay there during the time of the alleged contract had been but a continuation of a previous residence in his family, a different question would have been presented. But whatever the bearing of the proposed evidence might have been in such a case, we think it could not have had the effect claimed by the defendant when the deceased had before this taken charge of the child notwithstanding his settlement with the mother.

The declarations of the deceased regarding the payment of money to the plaintiff's wife, not made in connection with any act on his part, were properly excluded.

The first question arising upon the issue submitted to the jury is whether the right of action survives. It is insisted in behalf of the estate that the action does not survive because

penal in its nature; and we are referred to *Thayer* v. *Part-ridge*, 47 Vt. 423, for an authoritative expression as to the character of the action. In that case a trustee sought to re-lieve himself from liability by setting off against a sum acknowledged to be due the principal defendant, monies he had before paid the principal defendant on account of liquors sold in violation of law; and the court held that the trustee could not avail himself of the statute in that manner. In the opinion the statute authorizing the recovery of money so paid is spoken of as essentially penal in its nature and aim. But in *Laport* v. *Bacon*, 48 Vt. 176, a different view is expressed. There the plaintiff sought to recover money paid for liquor unlawfully sold in an action of general as-sumpsit, and the trial was by referee. It was contended that a claim of this nature could not be recovered under the common counts. The court held that the money was re-coverable on the count for money had and received; but said further that the action was not penal but remedial, and that the declaration could have been amended. And in the unreported case of *Pecker* v. *Barney*, heard at the general term in 1879, a decision was rendered which could not have been arrived at without adopting the view expressed in *La-port* v. *Bacon*. The defendant in that case sought to re-cover under his plea in offset money paid the plaintiffs for liquor sold in violation of law. Nothing could be recovered in offset except an indebtedness on contract, express or im-plied. Plaintiff's counsel insisted that the defendant's cause of action was not a demand resting in contract, but a right conferred by the statute for a penal purpose, and cited *Thayer* v. *Partridge* in support of his claim; but the de-fendant had judgment in offset.

The decisions in this State regarding the recovery of money paid as usury afford no support to the defendant's claim. The decision in *Hubbell* v. *Gale*, 3 Vt. 266, where it was held that the writ should have received the minute re-

quired in penal actions, was confined to that feature of the
law then existing which authorized a stranger to sue for the
recovery of the excess upon the borrower's failure to do so.
The distinction between the two provisions of the statute was
clearly drawn in the opinion; and in *Wheatley* v. *Waldo*,
36 Vt. 237, it was directly held that the action given the
party who pays the usury is remedial and not penal. In
*Ewing* v. *Griswold*, 43 Vt. 400, it was held that inasmuch
as the provision was remedial and not penal, recovery could
be had under a plea in offset. In *Roberts* v. *Burton's Est.*,
27 Vt. 396, it was held that a claim for the recovery of
money paid as usury survived against the estate of the per-
son who received it.

The case is clearly within the test applied at common law
to determine whether a demand survives. The rule is that
the cause of action survives against the estate whenever the
estate has received a benefit from the transaction for which
a recovery may be had by an action in form *ex contractu.*
*Hambly* v. *Trott*, Cowp. 371; *United States* v. *Daniel*, 6
How. 11; *Cravath* v. *Plympton*, 13 Mass. 454; *Roberts* v.
*Burton's Est.*, 27 Vt. 396. Money which the statute de-
clares to belong to the plaintiff, and to be recoverable in an
action for money had and received, is in the assets of this es-
tate. If the money is the plaintiff's, the death of its pos-
sessor cannot have deprived him of the right to recover it.

But the defendant submits that if the action is one that will
survive as not penal in its nature, it cannot be maintained,
because based upon an illegal transaction in which the
plaintiff and the deceased were equally in fault. The liquor
was sold by the deceased in violation of law and was bought
by the plaintiff for the purpose of unlawful sale; and neither
party could ordinarily have the aid of the court in any mat-
ter growing out of the transaction. But it is within the prov-
ince of the legislature to relieve either party to an illegal
transaction from the operation of this rule. The statute pro-

vides that one who makes a payment for liquor sold in violation of law may recover it back as money received and held to his use. If the plaintiff is within the purview of the statute, the doctrine that one *in pari delicto* shall not maintain a suit cannot be invoked against him, for the legislature has given him the right to sue, notwithstanding the character of the transaction. But the defendant insists that a statute should not be so construed as to contravene a well recognized and wholesome rule of law when there is room for its application elsewhere. It is urged that this statute should be held to give the right of recovery only to those who purchase for their personal use, and not to one dealer as against another. The argument is that when applied to a case like this the statute cannot punish one violator of the law without rewarding another to the same extent, and that the legislature cannot have intended an application of the provision where it would produce such a result. But we think the purpose of the legislature is to be determined from a broader survey of the law. If the vendor of intoxicating liquor sells on credit he cannot enforce collection of the price, and if he sells for cash he cannot defend his receipts against a demand for their return. If the deceased had sold on credit and his administrators were seeking to collect, it would hardly be urged in restriction of the statute that unless they were permitted to do so the law would secure the buyer a double advantage. The retail dealer, whether he buys on credit and refuses to pay, or pays and recovers back, will have the same benefit if unmolested himself, and no benefit in either case if those to whom he sells likewise take advantage of the law. The fact that one who takes advantage of the law may not himself be taken advantage of does not touch the root of the matter, and should not determine the construction of the law. It was the purpose of the legislature to load the traffic in all its stages with danger and uncertainty, leave every seller at the mercy

of the buyer, and deprive wealth thus obtained of that security which is the great incentive to legitimate trade.

It appears that some of the payments which the plaintiff seeks to recover were for beer "purchased and imported into this State from the State of New York" by the deceased, and sold to the plaintiff in the original packages. It is suggested that the exceptions do not show that the sale to the deceased was not made in this State, and that it should therefore be presumed that it was. If the sale to the deceased was in this jurisdiction, that transaction brought the commodity into the general mass of the property within the State, and left the sale to the plaintiff subject to the State law. But we think the fact of a purchase outside the State cannot be eliminated from the exceptions. No construction can dispose of the statement that the liquor was imported into this State by the deceased, and if the deceased imported it into the State he must have purchased it elsewhere. It is therefore necessary to consider whether the deceased, a resident of this State, was, in the absence of an act of Congress authorizing State regulation, protected by the federal constitution in selling in the original packages liquors imported by him from another State.

The decision of the Supreme Court of the United States in *Leisy* v. *Hardin*, 135 U. S. 100, is binding upon this court; and the case at bar, if within that decision, is to be determined by it. The plaintiffs in that case were brewers, residing and doing business in the State of Illinois, who had shipped their manufactured product into the State of Iowa, and sold it there by an agent in the original packages. The decision of the court was that " the State had no power to interfere by seizure, or any other action, in prohibition of importation and sale by the foreign non-resident importer"; and that the legislation under consideration was " to the extent indicated " repugnant to the constitution of the United States. It is urged that this decision should be given no ef-

fect beyond its precise language, and that a resident importer should still be held subject to the regulations of his State. But we think the case presented for determination, if not within the express terms of that decision, is clearly within its scope, and should be disposed of in accordance with it.

The ground of decision in the case cited is that the State cannot prohibit the importation of intoxicating liquors, and that the right to import carries with it the right to dispose of the thing imported. Then the State cannot control the action of its citizens in the matter of sale, unless it can deprive them of the right to import. But if each State can prevent its own citizens from engaging in importation, commerce cannot be effectively regulated by Congress. It is evident that the power of control must reach not only the articles to be imported but the agencies by which the importation may be made. Nothing less than this would enable Congress to secure to the business of the country that freedom from commercial embarrassment which is the recognized object of the constitutional provision in question. It being held that intoxicating liquor is an article of commerce and therefore entitled to importation, and that the right to import necessarily includes the right to sell, we see no escape from the conclusion that in disposing of this liquor in its original packages the deceased was in the exercise of a constitutional right, and not amenable to the statute under which the receipts of his other sales may be recovered.

*Judgments reversed; and judgment on auditor's report for $1,470, with interest to be computed by the clerk from the findings of the auditor on the basis of annual rests; and judgment on verdict for $722.81 and interest.*